Annestine ARMSTRONG, Appellant,

v.

The STATE of Texas, Appellee.

No. 01–04–00587–CV.

Court of Appeals of Texas,
Houston (1st Dist.).

Jan. 12, 2006.

Arlene Horwitz Guzick, Pamela D. Thacker Ware, Jackson, Lee & Chambers, L.L.P., Houston, TX, for Appellant.

Melinda Brents, Senior Assistant County Attorney, Michael A. Stafford, Harris County Attorney, Michael R. Hull, Assistant County Attorney, Houston, TX, for Appellee.

Panel consists of Chief Justice RADACK and Justices ALCALA and BLAND.

## OPINION

ELSA ALCALA, Justice.

Appellant, Annestine Armstrong, (Armstrong) appeals from an order of involuntary commitment to the Harris County Psychiatric Center (HCPC) as an inpatient, for not more than 90 days, for court-ordered temporary mental health services.[1] In two issues, Armstrong contends that the evidence is legally and factually insufficient to support the judgment rendered by the trial court. We conclude that the evidence is legally insufficient to support the commitment order and therefore need not address Armstrong's factual insufficiency challenge. We reverse and render judgment in favor of Armstrong.

1. Appeals from temporary involuntary commitment orders are not moot although, as here, they have expired, because the collateral consequences exception to the mootness doctrine applies to temporary commitment orders. *J.M. v. State,* 178 S.W.3d 185, 188 (Tex.App.-Houston [1st Dist.] 2005, no pet. h.).

## Background

On April 28, 2004, Mary Armstrong, Armstrong's mother, (mother) requested that the trial court commit Armstrong involuntarily to the HCPC. The mother's application included her affidavit attesting that Armstrong was hearing voices coming from the walls of the house, telling "them" to get out of the walls, refusing to allow people into the house to help clean it, and cursing. According to the affidavit, Armstrong "need[ed] help." After the application, two physicians, K. Cowan and Olga Demina, examined Armstrong and completed certificates of medical examination. One diagnosed her as bipolar and manic with delusions, and the other diagnosed her as bipolar and manic with psychosis, but both concluded that she was mentally ill and that, as a result of that mental illness, she was likely to cause serious harm to herself or to others.

Both medical certificates relayed underlying facts supporting their opinions. Dr. Cowan noted that Armstrong was poorly groomed, irritable, paranoid, had rapid and pressured speech, insisted that she was suing the hospital, insisted that she should not be at the hospital, denied her illness, and was "quite grandiose," although she also appeared to have above average intelligence and appeared to be educated. Dr. Cowan further stated in the certificate that Armstrong's mother had reported that Armstrong was deteriorating, refusing to give people access to her house, responding to the walls, and claiming that the neighbors were harassing her. Dr. Demina reported that Armstrong was very belligerent, hyper-talkative, paranoid, illogical, talked to walls, had poor insight and judgment, was aggressive and verbally abusive toward her mother, and would deteriorate if not hospitalized. Both certificates also showed that Armstrong had a history of medical problems, including an unspecified gastrointential problem, a history of diabetes, blindness in one eye, glaucoma, an infection, and diverticulitis.

After receiving the mother's application, her supporting affidavit, and the physicians' certificates, the trial court placed Armstrong into protective custody pending the involuntary commitment hearing. *See Johnstone v. State*, 961 S.W.2d 385, 387 n. 1 (Tex.App.-Houston [1st Dist.] 1997, no writ) (*stating* that in commitment case, trial court may consider medical certificates not admitted into evidence). At the involuntary commitment hearing, the trial court considered testimony by Dr. Douglas Samuels, Armstrong and her mother, in addition to the medical certificates prepared by Drs. Cowan and Demina.

Dr. Samuels testified that although Armstrong thwarted his attempts to examine her, he was able to diagnose her from his observations of her interactions with others and by reviewing her medical records. Dr. Samuels diagnosed Armstrong with bipolar disorder, and noted that "[s]he has been in this hospital six times and she's had this diagnosis." Dr. Samuels described Armstrong as very hostile, paranoid, belligerent, irritable, oppositional, verbally aggressive, cursing, and as having diminished sleep and diminished weight. Dr. Samuels testified that Armstrong was refusing to take the recommended psychiatric medications, which resulted in her inability to "demonstrate any usable insight." In addition, she refused medical treatment for her physical problems, including medications for high blood pressure, diabetes, and blindness in one eye, although she was taking eye drops for glaucoma. Dr. Samuels stated that Armstrong was treated recently in a hospital with insulin for her diabetes, but was not currently taking medication for her diabetes or allowing doctors to draw her blood to determine her blood sugar level. More-

over, Armstrong only "participates minimally" in the "other types of therapies" offered to her at HCPC and had no "real appreciation" for the consequences of her behavior. Although he acknowledged that she was not violent, Dr. Samuels concluded that Armstrong should remain at HCPC because she was likely to cause harm to herself due to her refusal to take medical treatment for "some serious conditions."

Armstrong's 75–year–old mother testified that Armstrong paid rent and lived with her before being admitted to HCPC. Her mother testified that Armstrong did not believe that anything was wrong with her and refused to take medications, which caused her mother concern because Armstrong had suffered for a long time from high blood pressure, diabetes, and diarrhea. Although Armstrong had previously sought medical help from a clinic near their house, she stopped going to the clinic and no longer had any prescribed medications to take. Her mother's concerns for Armstrong arose when police officers visited her home in response to a letter from Armstrong claiming that listening devices were in the walls of the house.

Armstrong testified that she had been hospitalized four times in the past nine months before her current stay at HCPC. One of her earlier hospitalizations was at HCPC, but Armstrong stated that she was released without the requirement of any further psychiatric follow-up visits. The three other hospitalizations were due to diarrhea caused by a bacterial infection that was not resolved by three courses of antibiotics. Armstrong denied any desire to hurt herself or others. She claimed that her neighbor was responsible for the noise in the walls by banging on the side of the house and screen door with trash-can lids. Armstrong stated that she no longer needed psychiatric medications because she was sleeping at night, no longer needed blood pressure medicine because a doctor had taken her off it, and no longer needed diabetes medication because she controlled her diabetes through diet, although she was seeking treatment for the diarrhea. At the end of Armstrong's testimony, the trial court determined that Armstrong was in need of involuntary commitment.[2]

The trial court's judgment states that the court found by clear and convincing evidence that Armstrong is mentally ill and as the result of the mental illness

(i) is suffering severe and abnormal mental, emotional, or physical distress;

(ii) is experiencing substantial mental or physical deterioration of her ability to function independently, except for reasons of indigence, to provide for the

2. After announcing the oral ruling that Armstrong was in need of involuntary commitment, the trial court immediately proceeded to conduct a hearing concerning the State's application to administer psychoactive medication. At that hearing, Dr. Samuels testified that Armstrong consistently refused medications because "she doesn't believe she needs them," but that he believes she should be ordered to take antipsychotics and mood stabilizers. He stated that Armstrong did not have the capacity to make a decision regarding whether to take the medications. He further testified that, without the medications, her prognosis would be "grave and [could] be life threatening" because she would not accept treatment for diabetes or hypertension. The trial court signed an "Order to Administer Psychoactive Medication," which Armstrong has not appealed. Although the State contends that we should consider evidence introduced at the medication hearing, that evidence was not introduced at the hearing to determine whether to commit Armstrong involuntarily. Accordingly, we do not consider it in this appeal. *See City of Galveston v. Shu,* 607 S.W.2d 942, 944 (Tex.App.-Houston [1st Dist.] 1980, no writ) (*holding* that testimony not introduced into evidence could not be considered on appeal).

proposed patient's basic needs; including food, clothing, health, or safety; and

(iii) is not able to make a rational and informed decision as to whether to submit to treatment.[3]

The trial court's judgment thus tracks TEX. HEALTH & SAFETY CODE § 574.034(a)(1)-(2)(c)(i)-(iii) (Vernon 2003). The trial court's judgment did not recite that Armstrong was likely to cause harm to herself or to others as a result of her mental illness and is thus premised only on subsection (a)(1)-(2)(c)(i)-(iii) of section 574.034 and not on subsection (a)(1)-(2)(A)-(B). *See* TEX. HEALTH & SAFETY CODE § 574(a).

### Legal Sufficiency

■ Armstrong contends that the evidence is legally insufficient to support the three findings recited in the trial court's judgment because the evidence fails to establish "a recent overt act" or a "continuing pattern of behavior" for each of those findings. *See* TEX. HEALTH & SAFETY CODE § 574(a), (d) (Vernon 2003). We conclude that the evidence is legally insufficient to establish the second of the three findings, and therefore do not reach Armstrong's complaints concerning the first and third of the three findings.

A court receiving an application for court-ordered temporary inpatient mental health services under the Health and Safety Code may order a person to receive those services when clear and convincing evidence shows that the proposed patient is mentally ill, and that, as a result of that mental illness, the person is either

(A) likely to cause serious harm to himself;

(B) likely to cause serious harm to others; or

(C) is:

(i) suffering severe and abnormal mental, emotional, or physical distress;

(ii) experiencing substantial mental or physical deterioration of the proposed patient's ability to function independently, which is exhibited by the proposed patient's inability, except for reasons of indigence, to provide for the proposed patient's basic needs, including food, clothing, health, or safety; and

(iii) unable to make a rational and informed decision as to whether or not to submit to treatment.

TEX. HEALTH & SAFETY CODE ANN. § 574.034(a). The trial court's judgment found Armstrong needed mental commitment under § 574.034(a)(C) only, and we therefore limit our review to that issue. *See* TEX. HEALTH & SAFETY CODE ANN. § 574.034(c); *Johnstone,* 961 S.W.2d at 388 (*stating* that trial court must specify which of three criteria found in Section 574.034(a) forms basis of commitment order and that review is limited to criteria identified).

■ The required burden of proof under the Health Code is clear and convincing evidence. *See* TEX. HEALTH & SAFETY CODE ANN. § 574.034(a). Subsection (d) of section 574.034 specifies that, for evidence to be clear and convincing under subsection 574.034(a): the evidence must include expert testimony and, unless waived, evidence of a "recent overt act" *or* a "continuing pattern of behavior" that tends to confirm either the likelihood of serious harm to the proposed patient or others or the proposed patient's distress and the deterioration of the proposed patient's ability to function. TEX. HEALTH & SAFETY CODE ANN. § 574.034(d). The trial court need not specify which of these alternatives for clear and convincing evidence supports its

---

**3.** We will refer to these recitals as the three findings.

subsection 574.034(a) findings. *J.M.*, 178 S.W.3d at 190; *M.S. v. State*, 137 S.W.3d 131, 135 n. 5 (Tex.App.-Houston [1st. Dist.] 2004, no pet.).

 "Clear and convincing evidence" means "that measure or degree of proof which will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." *State v. Addington*, 588 S.W.2d 569, 570 (Tex.1979); *J.M. v. State*, 178 S.W.3d 185, 189 (Tex.App.-Houston [1st Dist.] 2005, no pet. h.). An expert opinion recommending involuntary commitment must be supported by the factual bases on which it is grounded and not simply recite the statutory criteria. *J.M.*, at 193; *K.T. v. State*, 68 S.W.3d 887, 893 (Tex.App.-Houston [1st Dist.] 2002, no pet.). Thus, the expert should describe the patient's specific behaviors on which his or her opinion is based. *J.M.*, at 193.

 When the burden of proof at trial is clear and convincing evidence, an appellate court should conclude that the evidence is legally insufficient if, after reviewing all of the evidence in a light most favorable to the trial court's ruling, no reasonable factfinder could form a firm belief or conviction that the matter that must be proven is true. *In re J.F.C.*, 96 S.W.3d 256, 264–65 (Tex.2002); *accord Diamond Shamrock Ref. Co. v. Hall*, 168 S.W.3d 164, 166 (Tex.2005) (*applying J.F.C.* heightened standard when burden in trial court was by clear and convincing evidence). To give appropriate deference to both the factfinder's determinations and the role of the reviewing court, examining the evidence in the light most favorable to the judgment means that a reviewing court must assume that the factfinder resolved disputed facts in reaching its determination if a reasonable factfinder could do so. *J.F.C.*, 96 S.W.3d at 266. A corollary to this requirement is that a court should

disregard all evidence that a reasonable factfinder could have disbelieved or found to have been incredible. *Id.*

In summary, for the evidence to be legally sufficient to support the trial court's findings, the record must show that when Armstrong was committed, she was experiencing substantial mental or physical deterioration of her ability to function independently, which was exhibited by her inability, except for reasons of indigence, to provide for her basic needs, including food, clothing, health, or safety. *See* Tex. Health & Safety Code Ann. § 574.034(a)(2)(C). Additionally, the State's evidence must include expert testimony and evidence of a recent overt act or a continuing pattern of behavior that tends to confirm the deterioration of the proposed patient's ability to function. *See* Tex. Health & Safety Code Ann. § 574.034(d).

Viewed in a light most favorable to the trial court's ruling, the evidence shows that Armstrong was mentally ill and refusing treatment for her medical and psychiatric conditions, which resulted in her failure to have any "real appreciation" for the consequences of her behavior. She had been hospitalized six times in the recent past and exhibited many symptoms of mental illness. Her refusal to submit to treatment was resulting in her deterioration, inability to "demonstrate any usable insight," and refusal to allow any laboratory tests to determine her medical condition. Although these circumstances are quite serious, as explained below, they do not establish that Armstrong was experiencing substantial mental or physical deterioration of her ability to function independently, as exhibited by her inability to provide for her basic needs. *See* Tex. Health & Safety Code Ann. § 574.034(a)(2)(C).

### 1. *Mental Illness*

■ The evidence shows, and Armstrong does not contest, that she is mentally ill. Evidence of mental illness, however, does not establish that she was experiencing substantial mental or physical deterioration of her ability to function independently exhibited by her failure to provide for her basic needs. *See* TEX. HEALTH & SAFETY CODE ANN. § 574.034(a)(2)(C). We begin by noting that the Health and Safety Code requires that mental illness be shown as a separate inquiry from the issue of a person's deterioration of ability to function. *See* TEX. HEALTH & SAFETY CODE ANN. § 574.034(a)(2)(C)(ii) (*stating* that evidence must show that person is mentally ill, and that as a result of that mental illness, the person is experiencing substantial mental or physical deterioration of the person's ability to function independently to provide for basic needs). That a person is mentally ill or has been previously hospitalized for mental illness, therefore, is no evidence of the person's inability to function independently. *See Johnstone,* 961 S.W.2d at 389 (*citing Broussard v. State,* 827 S.W.2d 619, 622 (Tex.App.-Corpus Christi 1992, no writ) (*holding* that six or seven prior admissions for same mental illness insufficient to justify commitment for inability to function independently)); *K.T.,* 68 S.W.3d at 892. Moreover, evidence of the effects of mental illness does not necessarily establish evidence of *substantial* mental or physical deterioration unless the effects impair a person's ability to function independently to provide for basic needs. For example, poor grooming is insufficient "to justify depriving an individual of her liberty." *J.M.,* at 195. Poor hygiene and "oppositional behavior" also demonstrate mental illness, but alone do not rise to the level of an overt act or pattern of behavior that confirms a substantial deterioration of a person's ability to function independently to provide for her basic needs. *Id.* Evidence of poor insight and judgment, lack of trust towards others, insomnia, and diminished weight are likewise serious health problems, but they must be coupled with evidence that Armstrong is suffering substantial deterioration of her ability to provide for her basic needs. *See id.* Although the evidence shows that Armstrong is mentally ill, has physical health problems, and has been previously hospitalized for the mental illness, the State offered no testimony that, as a result of her mental condition, she is unable to function independently as exhibited by her inability to provide for her basic needs.

### 2. *Refusal of Treatment*

■ The evidence shows that Armstrong refused treatment for her chronic medical conditions, such as hypertension and diabetes, that she had no appreciation of the consequences of those refusals, which caused her health to deteriorate, and that her continued refusal would result in more severe deterioration. But the Health and Safety Code requires that when the person is involuntarily committed, the person must then be "experiencing substantial mental or physical deterioration of the proposed patient's ability to function independently." TEX. HEALTH & SAFETY CODE ANN. § 574.034(a). Evidence that the person will experience "substantial mental or physical deterioration" in the future is not sufficient. *See K.T.,* 68 S.W.3d at 889 (*holding* evidence legally insufficient to show recent overt act or continuing pattern of behavior tending to confirm substantial deterioration of ability to provide for basic needs when no evidence showed refusal to eat before hospitalization or that refusal actually resulted in malnutrition or other harm, despite evidence that K.T. had been to number of hospitals complaining about non-existent sutures); *J.M.,* at 195 (*holding* that more

than potential harm is necessary to commit patient involuntarily).

When Armstrong was committed, she was living with her mother and paying rent. No evidence in the record shows that Armstrong was experiencing substantial mental or physical deterioration of her ability to function independently at that point in time. The evidence shows only that she was "beginning" to deteriorate because of her refusal to take the medications for her chronic health problems. No evidence shows whether or when that deterioration would result in her "substantial" mental or physical deterioration, nor indicates that she was unable to function independently. See G.H. v. State, 96 S.W.3d 629, 635 (Tex.App.-Houston [1st Dist.] 2002, no pet.) (holding evidence legally insufficient to show substantial mental or physical deterioration despite physician's opinion that G.H. would continue to deteriorate if not medicated). Moreover, no evidence shows that Armstrong refused treatment for any emergent, imminent, life-threatening illness; her refusals to submit to laboratory work or to take psychiatric and high blood pressure medications do not establish that she had a substantial mental or physical deterioration in her ability to function independently. See Johnstone, 961 S.W.2d at 389 (holding that evidence of patient's repeated refusals to take medication legally insufficient to show overt act or continuing pattern of behavior despite physician's testimony that patient's ability to function independently would continue to deteriorate without medication); Broussard, 827 S.W.2d at 620 (holding that refusal to take medication, six or seven prior admissions for same condition, delusional, incoherent thoughts, and psychotic behavior insufficient to justify commitment on grounds of mental distress and inability to function independently); In re J.S.C., 812 S.W.2d 92 (Tex.App.-San Antonio 1991, no

writ) (holding that refusal to take medication and physician's testimony regarding deterioration of patient's ability to function independently and inability to care for himself insufficient to show overt act or continuing pattern of behavior).

### 3. Basic Need to Prevent Serious Harm to Herself or Others

The State contends that Dr. Cowan's and Dr. Demina's opinions that Armstrong was likely to cause serious harm to herself or others is evidence of her inability to provide for her basic needs of maintaining her health and safety. The trial court, however, did not base its judgment on the likelihood that Armstrong would cause serious harm to herself or others. See TEX. HEALTH & SAFETY CODE ANN. § 574.034(a)(1)-(2)(A)-(B). As the language of section 574.034(a)(1)-(2)(A)-(B) clarifies, subsections (A) and (B) of section 574.034(a)(1)-(2) constitute separate, alternative inquiries that are distinct from Armstrong's inability to function independently and provide for her basic needs, as contemplated by subsection (C) of section 574.034(a)(1)-(2). See TEX. HEALTH & SAFETY CODE ANN. § 574.034(a) (requiring that, as a result of mental illness, person is either (A) likely to cause serious harm to himself; or (B) likely to cause serious harm to others; or (C) ... (ii) experiencing substantial mental or physical deterioration of ability to function independently ... to provide for ... basic needs, including food, clothing, health, or safety).

Dr. Cowan's and Dr. Demina's opinions that Armstrong was likely to cause serious harm to herself or others pertain only to section 574.034(a)(1)-(2)(A)-(B)'s inquiries into probable future consequences of Armstrong's behavior. The physicians' opinions are not probative of Armstrong's present inability to provide for her basic needs of maintaining her health and safety

254

because she is "experiencing substantial mental or physical deterioration." *See* TEX. HEALTH & SAFETY CODE ANN. § 574.034(a)(1)-(2)(C)(ii).

Although we agree with the State that subsection (a)(1)-(2)(C)'s list of basic needs including "food, clothing, health, or safety" is illustrative and not exhaustive, there is no evidence in the record that, when Armstrong was involuntarily committed, she was "experiencing substantial mental or physical deterioration" of her ability to function independently due to an inability to provide for her basic needs. Having reviewed the record as a whole, we conclude that no evidence in the record shows that Armstrong was unable to function independently.

### Conclusion

We conclude that the evidence is legally insufficient to show that Armstrong was experiencing substantial mental or physical deterioration of her ability to function independently to provide for her basic needs. Accordingly, we hold that the evidence is legally insufficient to support the trial court's judgment ordering temporary inpatient mental health services.

We reverse the judgment ordering temporary inpatient mental health services signed by the trial court, and we render judgment denying the application to commit Armstrong for court-ordered temporary mental health services.