NO.
12-05-00401-CV

 

IN THE COURT OF APPEALS

                                

TWELFTH COURT OF APPEALS DISTRICT

                                

TYLER, TEXAS

 

 

§          APPEAL
FROM THE 

 

THE STATE OF
TEXAS FOR THE

BEST
INTEREST AND PROTECTION    §          COUNTY COURT AT LAW OF

OF B.L.

 

§          CHEROKEE
COUNTY, TEXAS

 




 
 
 
 
 
 
 
 
 
 
 
 
 
 
 


 

 



MEMORANDUM OPINION

            Appellant
B.L. appeals from an order for temporary inpatient mental health services and
an order to administer psychoactive medication. 
In two issues, B.L. asserts the evidence is legally and factually insufficient
to support the order for temporary inpatient mental health services and that
the trial court erred in granting the State’s application for an order to
administer psychoactive medication because the order for temporary inpatient
mental health services is invalid.  We
reverse and render.

 

Background








            On November 30, 2005, an application for court ordered
temporary mental health services was filed requesting the trial court to commit
B.L. to the Rusk State Hospital (the “Hospital”) for a period not to exceed
ninety days.  At the time the application
was filed, B.L. was a patient at the Hospital. 
The application was supported by two physician’s certificates of medical
examination for mental illness.  The
first certificate stated that, on November 29, Dr. R. H. Rodriguez evaluated
and examined B.L. and diagnosed him with bipolar I disorder, “most recent
episode mixed,” severe with psychotic features. 
Rodriguez stated that B.L. has been hospitalized since March 9, has been
under his care since July 5, and has been receiving medications, including
antipsychotics and mood stabilizers. 
According to Rodriguez, B.L. is mentally ill and is likely to cause
serious harm to himself; is suffering severe and abnormal mental, emotional or
physical distress; is experiencing substantial mental or physical deterioration
of his ability to function independently; and is unable to make a rational and
informed decision as to whether or not to submit to treatment.  According to the certificate, B.L. stated
that he gave Rodriguez and his social worker some money, that he gave $500 to “the
foundation,” that his company gave him a credit receipt for over $7,000, and
that he has paid a “trillion” dollars to social security.  According to Rodriguez, B.L. stated that he
had not spoken to his mother because of a communication problem and that the
Burke Center[1] was harassing her.  Rodriguez observed that B.L. “exhibited an
irritable mood,” was argumentative and confrontational, and spoke spontaneously
with the “pressure of speed.”  According
to Rodriguez, B.L.’s thought associations were loose and his conversation
difficult to follow.  B.L. expressed a
variety of grandiose and paranoid delusional beliefs, had no insight into his
illness, and exhibited impaired judgment. 
Rodriguez’s opinion is based upon the specific behaviors described
above.

            On November 30, Dr. Sethurama Srinivasan evaluated and
examined B.L. and diagnosed  him with
bipolar I disorder.  Srinivasan found
that B.L. is mentally ill and is suffering severe and abnormal mental,
emotional or physical distress; is experiencing substantial mental or physical
deterioration of his ability to function independently; and is unable to make a
rational and informed decision as to whether or not to submit to
treatment.  According to the certificate,
B.L. was hyperactive, overtalkative, delusional, and grandiose.  B.L.’s mood was “quite labile,” he was easily
agitated, and he became aggressive. 
Srinivasan’s opinion is based upon the specific behaviors described
above. 

            The hearing on the application was held on December
6.  At trial, Rodriguez stated that he
examined B.L. on November 29 and found that he suffered from bipolar I
disorder, mixed, severe, with psychotic features.  He opined that B.L. is likely to cause
serious harm to himself and suffers severe and abnormal mental, emotional, or
physical distress.  According to
Rodriguez, B.L. continues to experience grandiose and paranoid beliefs,
particularly his beliefs that he is very wealthy, that he has large sums of
money, and that he has enough money that signing up for social security is
unnecessary until next summer.  B.L. does
not believe he has a mental illness and has a pattern of noncompliance with
outpatient treatment.  When Rodriguez
attempts to engage B.L. in conversation, he is extremely disorganized in his
thinking and he talks continuously, making it difficult to have a conversation
with him.  Rodriguez stated that B.L. has
no insight into his illness and his judgment is impaired. 

            Rodriguez noted that B.L. would not accept any placement
in the community except a return to a house next to his mother’s.  According to Rodriguez, this house is not
B.L.’s property and is not habitable. 
Further, on the two occasions when an outpatient commitment was
attempted, no placement was found for him. 
Rodriguez is concerned that B.L. is so delusional that he will not have
an adequate place to stay when released. 
According to Rodriguez, B.L. has been ill for many years, but will not
consider another kind of medication. 
B.L. also has hypertension, but refuses to go to the medical clinic
because he does not believe he needs treatment. 

            According to Rodriguez, in the Hospital’s structured
setting, B.L. is very compliant and cooperative.  However, when they talk about B.L.’s beliefs
and how they interfere with his ability to function independently, B.L. becomes
very irritable, but never threatening towards him.  Rodriguez noted that B.L. has a history of “decompensation”
in the past that has escalated. Rodriguez stated that if B.L. is not treated,
his mental condition will deteriorate. 
According to Rodriguez, B.L. is a harm to himself because he refuses to
take medication for his physical illness and believes that he owns part of the
Burke Center and can stay there. 
Rodriguez opined that B.L.’s beliefs will seriously impair his ability
to function on his own because, although he believes he has large sums of
money, he has none.  According to
Rodriguez, his diagnosis is based on his personal examination of B.L., a review
of his medical history, and reasonable medical probability.  In Rodriguez’s opinion, B.L.’s “chronic”
mental illness is “partially refractory” to available therapies. Although
Rodriguez’s goal is a less restrictive environment, at this time, the Hospital
is the least restrictive available treatment option for B.L. 

            Rodriguez admitted that B.L. has improved considerably
since March.  B.L. is no longer verbally
aggressive or combative, but still exhibits disorganized, delusional thinking
and no improved insight.  Rodriguez
admitted that B.L. has committed no recent overt act that could cause him harm.
According to Rodriguez, B.L. has the capacity to feed and clothe himself
without assistance or prompting, has the capacity to go to a restaurant and
order food, and has the ability to provide for his own safety.  However, Rodriguez is unsure how B.L. would
pay for his food.  B.L. can initiate
conversation although Rodriguez stated that B.L. was difficult to follow
because he tends to talk continuously and loosely. 

            According to Rodriguez, B.L. understands the need for medications
and is taking an injectable medication every two weeks.  Rodriguez admitted that the medication B.L.
is taking is appropriate for treatment, but that this medication is causing
some side effects.  Although Rodriguez
would like to try different medications, they are oral medications and B.L.
refuses.  Rodriguez observed that B.L.
has high blood pressure, but B.L. stated that he does not need treatment.  In Rodriguez’s opinion, B.L.’s refusal to be
treated for high blood pressure is caused by his mental illness.  Rodriguez believes that B.L.’s refusal to
accept treatment is a continuing pattern and could harm him because he is at
risk for cardiac problems, considering his age, general health, and a “bad”
EKG. A recent EKG was better.

            B.L. testified that he has been shaking and trembling for
almost twenty-five years because of a medication that he took, is taking, and
feels that he needs.  According to B.L.,
Rodriguez stated that he would “watch” for a week and a half when the “last
court came together.”  B.L. testified
that it has been about seven and a half weeks. 
He noted that it probably took that long because he did not take
medication for high blood pressure. 
According to B.L., he works small jobs and lives without taking this
medication.  In fact, it has been over a
year since he was “told about that,” presumably regarding his high blood
pressure.  B.L. stated that he is a
farmer.  He wants his daughter and her
counsel to take over the case in Cherokee County.  B.L. stated that, for several years, he has
taken a rest period in the middle of the day because he was working extremely
hard before coming to the Hospital. 
Then, B.L. testified that he was diagnosed after being at the Hospital
and, after about four and a half months, it was determined that he suffers from
high blood pressure.

            On December 6, the trial court found that B.L. is
mentally ill, is likely to cause serious harm to himself, and is suffering
severe and abnormal mental, emotional or physical distress; is experiencing
substantial mental or physical deterioration of his ability to function
independently, that is exhibited by his inability, except for reasons of
indigence, to provide for his basic needs, including food, clothing, health or
safety; and is unable to make a rational and informed decision as to whether or
not to submit to treatment.  The trial
court entered an order for temporary inpatient mental health services,
committing B.L. to the Hospital for a period not to exceed ninety days.  In a separate order signed the same day, the
trial court authorized the Texas Department of Mental Health and Mental
Retardation (the “Department”) to treat B.L. with psychoactive medications,
including antipsychotics, mood stabilizers, and
anxiolytics/sedatives/hypnotics.  This
appeal followed.

 

Sufficiency
of the Evidence

            In his first issue, B.L. argues that the evidence is
neither legally nor factually sufficient to support the order of
commitment.  B.L. contends that the
testimony fails to show clear and convincing evidence of a recent overt act or
continuing pattern of behavior tending to confirm the likelihood of his causing
serious harm to himself or his distress and deterioration of his ability to
function.

Standard of Review

            In a legal sufficiency review where the burden of proof
is clear and convincing evidence, we must look at all the evidence in the light
most favorable to the finding to determine whether a reasonable trier of fact
could have formed a firm belief or conviction that its findings were true.  In re J.F.C., 96 S.W.3d 256,
266 (Tex. 2002).  We must assume that the
fact finder settled disputed facts in favor of its finding if a reasonable fact
finder could do so and disregard all evidence that a reasonable fact finder
could have disbelieved or found incredible. 
Id.  This does not
mean that we are required to ignore all evidence not supporting the finding
because that might bias a clear and convincing analysis.  Id. 

            The appropriate standard for reviewing a factual
sufficiency challenge is whether the evidence is such that a fact finder could
reasonably form a firm belief or conviction about the truth of the petitioner’s
allegations.  In re C.H.,
89 S.W.3d 17, 25 (Tex. 2002).  In
determining whether the fact finder has met this standard, we consider all the
evidence in the record, both that in support of and contrary to the trial court’s
findings.  Id. at
27-29.  Further, we must consider whether
disputed evidence is such that a reasonable fact finder could not have
reconciled that disputed evidence in favor of its finding.  In re J.F.C., 96 S.W.3d at
266.  If the disputed evidence is so
significant that a fact finder could not reasonably have formed a firm belief
or conviction, then the evidence is factually insufficient.  Id.  

Involuntary Commitment
Order








            The trial judge may order a proposed patient to receive
court ordered temporary inpatient mental health services if the judge or jury
finds, from clear and convincing evidence, that the proposed patient is
mentally ill and, as a result of the mental illness, he is likely to cause
serious harm to himself, is likely to cause serious harm to others, or is (i)
suffering severe and abnormal mental, emotional, or physical distress, (ii)
experiencing substantial mental or physical deterioration of his ability to
function independently, which is exhibited by his inability, except for reasons
of indigence, to provide for his basic needs, including food, clothing, health,
or safety, and (iii) unable to make a rational and informed decision as to
whether or not to submit to treatment.  Tex. Health & Safety Code Ann. §
574.034(a) (Vernon 2003). 

            To be clear and convincing under this statute, the
evidence must include expert testimony and, unless waived, evidence of a recent
overt act or a continuing pattern of behavior that tends to confirm either the
likelihood of serious harm to the proposed patient or others or the proposed
patient’s distress and the deterioration of his ability to function.  Tex.
Health & Safety Code Ann. § 574.034(d) (Vernon 2003).  Clear and convincing evidence means the
measure or degree of proof that will produce in the mind of the trier of fact a
firm belief or conviction as to the truth of the allegations sought to be
established.  State v. Addington,
588 S.W.2d 569, 570 (Tex. 1979).  The
statutory requirements for an involuntary commitment are strict because it is a
drastic measure.  In re C.O.,
65 S.W.3d 175, 182 (Tex. App.–Tyler 2001, no pet.). 

            The State provided expert testimony from two doctors who
examined B.L. and diagnosed him with bipolar I disorder.  However, expert testimony confirming mental
illness, standing alone, will not support an involuntary commitment.  T.G. v. State, 7 S.W.3d 248,
252 (Tex. App.–Dallas 1999, no pet.). 
Both doctors provided evidence showing that B.L. is mentally ill.
Rodriguez described B.L. as irritable, argumentative, and confrontational.  He said that B.L. spoke spontaneously with
the “pressure of speed,” exhibited loose thought associations and impaired
judgment, expressed a variety of grandiose and paranoid delusional beliefs, had
no insight into his illness, and engaged in conversations that were difficult
to follow.  Srinivasan stated that B.L.
was hyperactive, overtalkative, delusional, grandiose, easily agitated; became
aggressive; and exhibited a “quite labile” mood.  Evidence of continuing delusional or paranoid
behavior merely reflects that an individual is mentally ill and in need of
hospitalization, but does not provide the continuing pattern of behavior
necessary to support a commitment.  See
In re C.O., 65 S.W.3d at 182; Broussard v. State,
827 S.W.2d 619, 622 (Tex. App.–Corpus Christi 1992, no writ).  An expert opinion recommending commitment
must be supported by the factual bases on which it is grounded and not simply
recite the statutory criteria.  See J.M.
v. State, 178 S.W.3d 185, 193 (Tex. App.–Houston [1st Dist.] 2005, no
pet.).  What is necessary is the expert’s
description of the patient’s specific behaviors on which his or her opinion is
based.  See id.

            Because Rodriguez admitted that B.L. had not committed a
recent overt act and there is no 
evidence of a recent overt act, we must examine the record to determine
whether there is clear and convincing evidence showing a continuing pattern of
behavior that tends to confirm either the likelihood of serious harm to B.L. or
his distress and deterioration of his ability to function.  See Tex.
Health & Safety Code Ann. § 574.034(d).  Rodriguez stated that B.L. has a pattern of
noncompliance with outpatient treatment. 
However, Rodriguez offered no specific evidence to support his
statement.  According to Rodriguez, he
was concerned that B.L. was so delusional he would not have an adequate place
to stay when released. As part of this concern, Rodriguez opined that B.L.’s
belief that he has large sums of money will seriously impair his ability to
function on his own.  B.L. also believes
that he can stay at the Burke Center. 
However, Rodriguez admitted that B.L. has the capacity to clothe and
feed himself and has the ability to provide for his own safety.  Moreover, B.L. can initiate conversations,
even though he is difficult to follow. 
Rodriguez offered no specific evidence of a continuing pattern of
behavior of the likelihood of serious harm to B.L. or that would generally
affect his ability to function independently on a daily basis without the
imposition of inpatient mental health services. 
See Broussard, 827 S.W.2d at 622.  To the contrary, Rodriguez testified that
B.L. is capable of meeting his daily physical needs without assistance or
prompting.  The State must show more than
delusions or other facts that merely confirm B.L.’s mental illness to meet the
evidentiary standard for a temporary commitment.  See In re C.O., 65 S.W.3d at
182.








            Rodriguez testified that B.L. understands the need for
medication for his mental illness and is taking an injectable medication as
treatment. However, he refuses different oral medications that Rodriguez would
like him to try.  Additionally, Rodriguez
stated that B.L. refuses treatment for high blood pressure.  Rodriguez believes that B.L.’s refusal is a
result of his mental illness and is a continuing pattern of behavior that could
harm him.  B.L. does not believe he needs
treatment. According to Rodriguez, B.L. is at risk for cardiac problems,
considering his age, general health, and recent EKGs.  Although there may be some evidence of
possible serious harm to B.L. because of his refusal to be treated for high
blood pressure, we cannot say that this evidence would lead a reasonable trier
of fact to have formed a firm belief or conviction of a continuing pattern
tending to confirm the likelihood of serious harm to B.L.  See Tex.
Health & Safety Code Ann. § 574.034(d); In re J.F.C.,
96 S.W.3d at 266.  Moreover, the State
offers no evidence or legally insufficient evidence to show that B.L. was
unable to function independently because of his refusal to take medication for
his high blood pressure or that his pattern of behavior demonstrates his
distress and deterioration of his ability to function.  See Armstrong v. State, No.
01-04-00587-CV, 2006 WL 66465 at *5 (Tex. App.–Houston [1st Dist.] Jan. 12,
2006, no pet.); In re J.M., 178 S.W.3d at 194-95.

            In summary, the State failed to introduce clear and
convincing evidence of an overt act or continuing pattern of behavior that
tended to confirm either the likelihood of serious harm to B.L. or his distress
and deterioration of his ability to function. 
Therefore,  viewing the evidence
in the light most favorable to the finding, we conclude that a reasonable trier
of fact could not have formed a firm belief or conviction that this finding was
true.  See In re J.F.C.,
96 S.W.3d at 266.  Consequently, the
evidence is legally insufficient to support the trial court’s finding based
upon section 574.034(d) of the Texas Health and Safety Code.  Having determined that the evidence is
legally insufficient, it is unnecessary for us to address B.M.’s argument that
the evidence is factually insufficient to support the trial court’s
finding.  See Tex. R. App. P. 47.1.

Psychoactive Medication
Order

            In his second issue, B.L. contends that the trial court
erred in granting the State’s application for an order to administer
psychoactive medication because the order for temporary inpatient mental health
services is invalid.  A trial court may
issue an order authorizing the administration of one or more classes of
psychoactive medications to a patient who is under a court order to receive
inpatient mental health services.  Tex. Health & Safety Code Ann. §
574.106(a) (Vernon Supp. 2005).  The
trial court may issue an order only if the trial court finds by clear and
convincing evidence after the hearing that the patient lacks the capacity to
make a decision regarding the administration of the proposed medication and
treatment with the proposed medication is in the best interest of the
patient.  Tex. Health & Safety Code Ann. § 574.106(a-1) (Vernon
Supp. 2005).  Having found the evidence
legally insufficient to support the trial court’s order of commitment, we have
held that the trial court’s order for temporary inpatient mental health
services is invalid.  Therefore, the
order authorizing administration of psychoactive medication is also
invalid.  See Tex. Health & Safety Code Ann. §
574.106(a).  We sustain B.L.’s second
issue.

 

Conclusion

            Based upon our review of the record, we conclude that the
evidence is legally insufficient to support the trial court’s order of
commitment for temporary inpatient mental health services. Therefore, the order
for administration of psychoactive medication is invalid.

            We reverse the trial court’s order of
commitment for temporary inpatient mental health services and for
administration of psychoactive medication. 
We  render judgment denying the State’s applications
for court ordered temporary mental health services and for an order to
administer psychoactive medication.

 

 

                                                                                                     JAMES T. WORTHEN    

                                                                                                                 Chief Justice

 

 

Opinion delivered May 24, 2006.

Panel consisted of Worthen, C.J., Griffith, J., and DeVasto,
J.

 

 

 

 

 

 

 

 

 

 

 

(PUBLISH)











[1] Neither Rodriguez’s certificate of medical
examination nor his testimony at the hearing on the application provided any
information about the location or the purpose of the Burke Center.