

**In The**
**Court of Appeals**
**Sixth Appellate District of Texas at Texarkana**

_____

No. 06-09-00028-CV
_____

THE STATE OF TEXAS FOR THE
BEST INTEREST AND PROTECTION OF E.R.

On Appeal from the County Court at Law No. 2
Hunt County, Texas
Trial Court No. M-09447

Before Morriss, C.J., Carter and Moseley, JJ.
Opinion by Chief Justice Morriss

OPINION

No doubt, E.R. is a woman who suffers from mental illness[1] and has not been particularly

cooperative with efforts intended to help her.  But what comes before this Court is E.R.'s appeal of

the trial court's order committing her for temporary mental health services and directing that she be

given psychoactive medications.  *See* TEX. HEALTH & SAFETY CODE ANN. § 574.034 (Vernon 2003).

To justify such an order, the State must meet a rather rigorous set of proof requirements.  Because

we find that the evidence is legally insufficient to show a recent overt act by E.R. or a continuing

pattern of behavior that tends to confirm either (a) the likelihood of serious harm to E.R. or others

or (b) her distress and the deterioration of her ability to function, we reverse the order of the trial

court and direct E.R.'s release from commitment.  *See* TEX. HEALTH & SAFETY CODE ANN.

§ 574.034(d).

*(1)     What Must Be Proven*

Orders for temporary mental health services are governed by Section 574.034 of the Texas

Health and Safety Code, which has very particular proof requirements:

> (a) The judge may order a proposed patient to receive court-ordered
> temporary inpatient mental health services only if the judge or jury finds, from clear
> and convincing evidence, that:
>
> (1) the proposed patient is mentally ill; and
>
> (2) as a result of that mental illness the proposed patient:

---

[1]E.R. has been diagnosed with schizophrenia.

2

(A) is likely to cause serious harm to himself;

(B) is likely to cause serious harm to others; or

(C) is:

(i) suffering severe and abnormal mental, emotional, or physical distress;

(ii) experiencing substantial mental or physical deterioration of the proposed patient's ability to function independently, which is exhibited by the proposed patient's inability, except for reasons of indigence, to provide for the proposed patient's basic needs, including food, clothing, health, or safety; and

(iii) unable to make a rational and informed decision as to whether or not to submit to treatment; . . . .

TEX. HEALTH & SAFETY CODE ANN. § 574.034. If the judge or jury finds that the proposed patient meets the prescribed commitment criteria, the judge or jury must specify which criterion forms the basis of the decision. TEX. HEALTH & SAFETY CODE ANN. § 574.034(c). In this case, mental illness is not disputed and there is no claim that E.R. is a threat to harm others. The two alternative grounds for relief at issue are subsections (2)(A) and (2)(C).

Clear and convincing evidence is that measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established. TEX. CIV. PRAC. & REM. CODE ANN. § 41.001(2) (Vernon 2008); *State v. Addington*, 588 S.W.2d 569, 570 (Tex. 1979). Section 574.034(a) specifically requires that, to be clear and convincing, the evidence must, unless waived, include expert testimony and evidence of a recent overt act or a continuing pattern of behavior that tends to confirm (a) the likelihood of serious harm

3

to the proposed patient or others or (b) the proposed patient's distress and the deterioration of the proposed patient's ability to function. TEX. HEALTH & SAFETY CODE ANN. § 574.034(d). The overt act or continuing pattern of behavior "must relate to the criterion on which the judgment is based." *See In re F.M.*, 183 S.W.3d 489, 492 (Tex. App.—Houston [14th Dist.] 2005, no pet.); *J.M. v. State*, 178 S.W.3d 185, 193 (Tex. App.—Houston [1st Dist.] 2005, no pet.).

Because the State's burden of proof is clear and convincing evidence, we apply heightened standards of review. *See In re C.H.*, 89 S.W.3d 17, 25 (Tex. 2002); *In re M.M.*, 184 S.W.3d 416, 417–18 (Tex. App.—Dallas 2006, no pet.). In reviewing the legal sufficiency of the evidence where the burden of proof is clear and convincing evidence, we consider all of the evidence in the light most favorable to the finding[2] to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its findings were true. *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002). We must assume that the trier of fact resolved disputed facts in favor of its finding if a reasonable trier of fact could do so, and we must disregard all contrary evidence that a reasonable trier of fact could have disbelieved or found to be incredible. *Id.*

In reviewing factual sufficiency challenges, we review all the evidence in the record, both supporting and opposing the trial court's findings. *C.H.*, 89 S.W.3d at 27–29. We must give due consideration to evidence the trier of fact could reasonably have found to be clear and convincing.

---

[2]An order of commitment may not be upheld on a factual basis that was urged to, yet was rejected by, the trial court. *Johnstone v. State*, 961 S.W.2d 385, 388 (Tex. App.—Houston [1st Dist.] 1997, no writ).

*Id.* at 25. Under the clear-and-convincing standard, we determine whether the evidence is such that the trier of fact could reasonably form "a firm belief or conviction" as to the truth of the allegations sought to be established by the State. *Id.* We must consider whether disputed evidence is such that a reasonable trier of fact could not have reconciled that disputed evidence in favor of its finding. *J.F.C.*, 96 S.W.3d at 266.

*(2)      The Trial Court's Findings*

The trial court ordered temporary mental health services for a time period not to exceed ninety days and authorized the administration of psychoactive medication.[3] In its order, the court found that E.R. is likely to cause serious harm to herself. It made further findings: she will, if not treated, continue to suffer severe abnormal mental, emotional, or physical distress; she is experiencing substantial mental or physical deterioration of her ability to function, which is exhibited by her inability, except for reasons of indigence, to provide for basic needs including food, clothing, health, or safety; and she is unable to make a rational and informed decision as to whether to submit to treatment.

---

[3]We do not have a copy of the order authorizing psychoactive medication in the record before us, although it was originally and mistakenly attached as an exhibit to the court reporter's record, a mistake which was promptly corrected. Although E.R. challenges the sufficiency of the evidence to support the trial court's findings in that order, her notice of appeal did not indicate that she was appealing that order specifically. Nonetheless, the order authorizing administration of psychoactive medication must be supported by a valid order for temporary mental health services. *See* TEX. HEALTH & SAFETY CODE ANN. § 574.106(a)(1) (Vernon 2008). That said, if the order for temporary mental health services is found to be unsupported, the order authorizing administration of psychoactive medication will, likewise, fail. *See* TEX. HEALTH & SAFETY CODE ANN. § 574.104(a)(3) (Vernon Supp. 2008), § 574.106(a)(1).

*(3)     The Evidence Presented*

The State presented the testimony of Dr. A. Olufemi Layeni, M.D., a psychiatrist at the Terrell State Hospital. Layeni was the only witness to testify at the hearing on the State's application. The record of the hearing on the State's application contains approximately nineteen pages of testimony, a little over five of which are dedicated to testimony concerning the availability, possible side effects, and overall effectiveness of psychoactive medication to treat E.R.'s mental illness. In the remaining testimony spanning almost fourteen pages, most of the details tend to confirm only the fact that, indeed, E.R. suffers from a mental illness, a fact not in dispute. Where the testimony addresses necessary elements of proof on the issues in question, the State's questions and Layeni's testimony, in many places, tracks the language of the statute. Thus, much of the testimony is conclusory, especially as to the likelihood that E.R. will continue to deteriorate. While those characteristics of the record do not make it impossible for the State to meet its burden of proof, we offer them to show the relatively brief, largely conclusory record. Nonetheless, the question before us is whether the State proved each element of the case by clear and convincing evidence.

Layeni explained that E.R. first came to the hospital February 25, 2009, having been transferred from the Medical Center of McKinney based on certain specific behaviors: (1) not taking care of herself, (2) not taking medications, (3) not having food in the house, (4) barricading herself in the house, and (5) not allowing any contact with those people trying to see to her welfare. He

6

testified that E.R. was supposed to be attending a mental health clinic on an outpatient basis but that she had stopped going in December 2008.

Layeni testified that E.R. has been diagnosed with schizophrenia. When asked if she still suffered from that condition, he replied, "I believe so." He went on to testify that, in this instance, he has diagnosed E.R. with schizophrenia. His diagnosis was based on her history and the information from referral sources. He explained that it has "been really difficult to get a history from [E.R]. because she refuses to cooperate with the treatment team" and will not talk to anyone. All efforts to "discuss and gain any meaningful information" from E.R. has been prevented by her refusal to cooperate.

Layeni described the symptoms of E.R.'s mental illness. He conceded that there is no evidence that E.R. suffers from hallucinations associated with schizophrenia, later clarifying that her refusal to cooperate has prevented him from determining whether she is experiencing hallucinations.

Layeni concluded that E.R. is likely to cause herself serious harm if she is not treated properly for her mental illness. He based this conclusion on the reports made before she arrived at Terrell State Hospital, her failure to eat, her failure to take care of herself, and reports of the instance in which she barricaded herself in her home without food. According to Layeni, such behaviors suggest that E.R.'s illness is interfering with her ability to fend for herself.

Layeni added that E.R. will continue to deteriorate without treatment. Her condition is deteriorating, and it began to do so after she stopped taking her medication. The symptoms of her

mental illness will return when medication is stopped, he says. According to Layeni, a patient who goes untreated deteriorates and becomes withdrawn and paranoid, not talking to anyone, refusing any help, and not eating. He explained that the worst case scenario will be starvation. He did not opine whether that scenario was likely.

Medical records from McKinney Medical Center, at which E.R. was first admitted, show that she made comments to medical staff that family members or someone else had been stabbing her with needles. Layeni testified that such delusions are consistent with the delusions that accompany schizophrenia. The records also demonstrate that, at least at some point, E.R. believed that medication was being put in her mouth while she slept. Layeni relied on these medical records in developing his opinion about E.R.

The State asked Layeni to elaborate on what he thought would confirm that E.R. is likely to cause serious harm to herself. He explained that her social withdrawal, refusal to talk to anyone, and poor hygiene confirmed that she is likely to cause serious harm to herself. The doctor reiterated that he believes E.R. will deteriorate further without treatment. He says he cannot determine whether E.R. is able to provide food for herself or whether she just does not care to eat. He confirmed that she has been eating at the hospital.

The State also presented the two required physician's certificates of medical examination for mental illness, one from Layeni and the other from Dr. Doyle Carson of the Medical Center of McKinney. *See* TEX. HEALTH & SAFETY CODE ANN. § 574.009(a) (Vernon 2003). Layeni's

certificate presents similar opinions and bases, citing that E.R. was not taking adequate care of herself, was not keeping a sanitary home, did not have food in the home, was not bathing, was not cooperating with her treatment, and was selectively mute. In an addendum, Layeni noted that, on or about March 3, 2009, E.R. barricaded herself in her house, adding that she was staying in her house without food and that she was refusing to allow visits from her caregivers. Carson's certificate opines that E.R. poses a risk of serious harm to herself based on her failure to eat, failure to bathe, refusal of medication, unsanitary state, and delusions that people were poisoning her and stabbing her with needles. In an addendum to his report, Carson notes the following acts by E.R.: refusing all medication, not eating, not bathing, and not allowing caregivers into her house. The addendum does not detail the significance of these acts.

The medical records admitted into evidence generally indicate that E.R. may have experienced some hallucinations or, at least, some paranoia and confusion. Further, the records show that E.R. was reluctant to cooperate with the hospital staff to some degree: she allowed them to check her vital signs but refused medication they offered. E.R. was withdrawn, asocial, and poorly groomed but was "eating well" and posed no behavior management problems.

*(4)*     *Legally Insufficient Evidence Supports Trial Court's Findings*

E.R. does not challenge the trial court's finding that she suffers from a mental illness. *See* TEX. HEALTH & SAFETY CODE ANN. § 571.003(14) (Vernon Supp. 2008) (defining mental illness). But an expert diagnosis of mental illness, standing alone, is not sufficient to confine a patient for

9

treatment. *See M.S. v. State*, 137 S.W.3d 131, 136 (Tex. App.—Houston [1st Dist.] 2004, no pet.); *Broussard v. State*, 827 S.W.2d 619, 622 (Tex. App.—Corpus Christi 1992, no writ). Likewise, evidence that merely reflects a patient's mental illness and need for hospitalization is insufficient to meet the State's burden. *See M.S.*, 137 S.W.3d at 136. The expert's opinions and recommendations must be supported by a showing of the factual bases on which they are grounded. *State ex rel. C.C.*, 253 S.W.3d 888, 893 (Tex. App.—Dallas 2008, no pet.); *State ex rel. E.E.*, 224 S.W.3d 791, 794 (Tex. App.—Texarkana 2007, no pet.); *T.G. v. State*, 7 S.W.3d 248, 252 (Tex. App.—Dallas 1999, no pet.). Put another way, the State must show more than delusions or other facts that merely confirm a proposed patient's mental illness to meet the evidentiary standard for a temporary commitment. *See In re C.O.*, 65 S.W.3d 175, 182 (Tex. App.—Tyler 2001, no pet.). We now turn to the record to determine whether the State did so.

*(a)     The Likelihood of Serious Harm to E.R.*

The trial court found that E.R. "is likely to cause serious harm to self." To be clear and convincing under Section 574.034(a), the evidence to support this finding must include expert testimony and evidence of a recent overt act or a continuing pattern of behavior that tends to confirm (1) the likelihood of serious harm to the proposed patient or others or (2) the proposed patient's distress and the deterioration of the proposed patient's ability to function. TEX. HEALTH & SAFETY CODE ANN. § 574.034(d). The overt act or continuing pattern of behavior "must relate to the criterion on which the judgment is based." *See F.M.*, 183 S.W.3d at 492; *J.M.*, 178 S.W.3d at 193.

10

A threat of harm to the patient must be substantial and based on actual dangerous behavior manifested by some overt act or threats in the recent past. *J.M.*, 178 S.W.3d at 193; *In re K.D.C.*, 78 S.W.3d 543, 547 (Tex. App.—Amarillo 2002, no pet.).

Layeni testified that E.R. is likely to cause serious harm to herself, basing his opinion on prior reports, her failure to eat, her failure to take care of herself, and the report of the barricading incident. He later added that E.R.'s social withdrawal, refusal to communicate, and poor hygiene demonstrate a threat of harm to herself. We reiterate that Layeni's certificate of medical examination provided the following bases for his opinion that E.R. poses a risk of serious harm to herself: she was not taking adequate care of herself, she was not keeping a sanitary home, she did not have food in the home, she was not bathing, she was not cooperating with her treatment, and she was selectively mute. He also noted that E.R. barricaded herself in her home and added that she was staying in her home without food and that she was refusing to allow visits from her caregivers although he did not provide a specific connection between those acts and a specific opinion. Carson's certificate of medical examination cited the following details as support for his opinion that E.R. is likely to cause serious harm to herself: refusal to eat, failure to bathe, refusal of medication, unsanitary living conditions, and delusions that people were stabbing her with needles and/or poisoning her. He added notations to his certificate that concerned her refusal of medication, her poor eating and bathing practices, and her refusal to allow caregivers into her home. Again, though, these notations do not reveal the significance of the noted actions.

11

The State presented evidence of an incident in which E.R. was said to have barricaded herself in her home. Layeni referred to this incident in his certificate of medical examination, again, though without explanation of the incident's significance. He also testified very briefly about the barricade incident. We know nothing of the details of the barricade incident such as duration or manner of barricading, but we do learn that, apparently, E.R. barricaded herself in her home out of fear that someone was trying to harm her. This evidence is a recent overt act, but the record leaves uncertain as to what the act may confirm. The record does not give us enough information to conclude that the evidence satisfies the heightened burden placed on the State. What little the record does show us about the incident suggests that the incident was brought about by E.R.'s paranoia, a symptom of her mental illness. Further, the record would also suggest that E.R. barricaded herself in her home as a measure of protection, albeit an effort most likely made in response to paranoia. Without more, evidence of the incident lends no support to a finding that E.R. posed a risk of serious harm to herself. As we have noted, that evidence confirming only that a proposed patient is mentally ill is insufficient to meet the evidentiary standard for court-ordered mental health services. *See C.O.*, 65 S.W.3d at 182.

Layeni specifically cited E.R.'s refusal to communicate as evidence that she poses a risk of serious harm to herself. His certificate of medical examination likewise refers to the fact that E.R. remains "selectively mute." A patient's refusal to communicate with the hospital staff is insufficient to support the finding required to authorize court-ordered mental health services. *J.M.*, 178 S.W.3d

12

at 195. The evidence that E.R. remains selectively mute provides no support to the trial court's finding that E.R. poses a risk of serious harm to herself.[4]

There is also evidence that E.R. had not been eating properly. A proposed patient's refusal to eat may be sufficient evidence to support an order for temporary commitment when there is specific evidence of the patient's refusal *and* the resulting harm that refusal has caused to the proposed patient. *Compare K.T. v. State*, 68 S.W.3d 887 (Tex. App.—Houston [1st Dist.] 2002, no pet.) (evidence insufficient when State presented evidence of patient's refusal to eat while hospitalized but failed to show that her refusal resulted in malnutrition or other harm) *with E.E.*, 224 S.W.3d at 794 (evidence sufficient to show risk of harm to self when patient was found to be dehydrated after admitting she had been fasting for one week); *see also State ex rel. Y.A-Y.*, No. 12-03-00242-CV, 2004 Tex. App. LEXIS 2961 (Tex. App.—Tyler Jan. 8, 2004, no pet.) (mem. op.) (evidence sufficient where patient refused to eat and drink for days at a time, resulting in weight

---

[4]To the extent that the evidence that E.R. was selectively mute is relevant to the distress and deterioration finding, we also conclude that such evidence is insufficient. When faced with evidence of poor hygiene, mania, and oppositional behavior, the Tyler court concluded that such evidence merely demonstrated the proposed patient's mental illness and failed to constitute evidence of a recent overt act or continuing pattern of behavior that demonstrated distress or tended to confirm a substantial deterioration of the proposed patient's ability to provide for his own basic needs. *See In re B.S.*, No. 12-02-00217-CV, 2003 Tex. App. LEXIS 4640, at *13–14 (Tex. App.—Tyler May 30, 2003, no pet.) (mem. op.). Indeed, courts have generally treated poor grooming as insufficient to justify depriving an individual of his or her liberty and poor hygiene, while demonstrative of mental illness, as falling short of an overt act or pattern of behavior that confirms a substantial deterioration of a person's ability to function independently to provide for his or her basic needs. *See K.E.W. v. State*, 276 S.W.3d 686 (Tex. App.—Houston [1st Dist.] 2008, no pet.); *Armstrong v. State*, 190 S.W.3d 246, 252 (Tex. App.—Houston [1st Dist.] 2006, no pet.).

13

loss and risk of dehydration).  The San Antonio court concluded that the evidence was insufficient when it showed that a proposed patient was not eating properly but failed to show the eating habits resulted in weight loss or malnutrition.  *See In re Breeden*, 4 S.W.3d 782, 788–89 (Tex. App.—San Antonio 1999, no pet.).

Here, we have very little information regarding E.R.'s eating habits.[5]  We do not know, for instance, how long she had been without food or whether there is a regular and continuous state of bare cupboards.  The record is silent as to whether E.R. has suffered any adverse health effects as a result of her failure to maintain proper eating habits.  Further, the record does show that E.R. has, in fact, been eating at the hospital.

Layeni testified that the "worst case scenario" would be that refusal of treatment could lead to death by starvation.  While we recognize this scenario as a compelling possibility that should cause concern, it remains just that, a possibility.  There is no evidence that would suggest that E.R. has suffered any of the effects of starvation and no evidence that starvation or other ill effects were likely.  Evidence that the proposed patient *might* cause serious harm to himself or herself is

---

[5]Layeni testified that he could not say whether E.R.'s eating decisions were based on her choice or her inability to provide food for herself, at least suggesting that indigence may be the reason for E.R.'s failure to eat properly.  Adding to the suggestion, the record shows that E.R. has been eating in the hospital.  Section 574.034 specifically excepts "reasons of indigence" as a basis for a finding that a proposed patient cannot provide for his or her basic needs.  TEX. HEALTH & SAFETY CODE ANN. § 574.034(a)(2)(C)(ii); *State for the Best Interest & Prot. of S.C.*, No. 05-08-00373-CV, 2008 Tex. App. LEXIS 6095, at *14 (Tex. App.—Dallas Aug. 13, 2008, no pet.) (mem. op.).  So, the evidence that E.R. was not eating properly would also fail to constitute a continuing pattern of behavior that would confirm E.R.'s distress and the deterioration of her ability to function.  *See* TEX. HEALTH & SAFETY CODE ANN. § 574.034(d).

insufficient to satisfy the second element. *State ex rel. L.C.F.*, 96 S.W.3d 651, 657 (Tex. App.—El Paso 2003, no pet.); *C.O.*, 65 S.W.3d at 181–82; *Broussard*, 827 S.W.2d at 621–22.

We conclude that the evidence is legally insufficient to support the trial court's finding that E.R. is likely, as a result of her mental illness, to harm herself.

*(b)      Distress and Deterioration*

Next, we examine the record for evidence of a recent overt act or a continuing pattern of behavior that confirms the multifaceted finding under Section 574.034(a)(2)(C).[6]  For this evidence to meet the clear and convincing standard, it must show a recent overt act or a continuing pattern of behavior that tends to confirm the proposed patient's distress and the deterioration of the proposed patient's ability to function.  TEX. HEALTH & SAFETY CODE ANN. § 574.034(d)(2).  Layeni's testimony suggested that E.R. will deteriorate as a result of the cessation of medication for her mental illness.  There is also some discussion regarding the delusions E.R. may be having.  We will discuss each item of evidence in turn.

First, Layeni testified that he believes E.R. will deteriorate further without treatment.  This conclusion, without the required evidence of a recent overt act or a continuing pattern of behavior

---

[6]We must find sufficient evidence of the following three elements:  (1) patient is suffering severe and abnormal mental, emotional, or physical distress; (2) patient is experiencing substantial mental or physical deterioration of the proposed patient's ability to function independently, which is exhibited by the proposed patient's inability, except for reasons of indigence, to provide for the proposed patient's basic needs, including food, clothing, health, or safety; and (3) patient is unable to make a rational and informed decision as to whether or not to submit to treatment.  TEX. HEALTH & SAFETY CODE ANN. § 574.034(a)(2)(C).

of the risk of serious harm to herself or evidence confirming her distress and deterioration of her ability to function, is insufficient to satisfy the State's burden to present clear and convincing evidence. An expert opinion recommending commitment must be supported by the factual bases on which it is grounded and not simply recite the statutory criteria. *See J.M.*, 178 S.W.3d at 193. Evidence of refusal to take medication, alone, is not an overt act or continuing pattern of behavior tending to confirm a proposed patient's distress or a deterioration of the ability to function. *See Armstrong*, 190 S.W.3d at 252–54; *Johnstone*, 961 S.W.2d at 389. We add that evidence that the proposed patient will experience substantial mental or physical deterioration in the future does not establish this element. *See Armstrong*, 190 S.W.3d at 252–53 (evidence showed only that patient was *beginning* to deteriorate due to her refusal to take medications for her chronic health problems, not that she was *currently* experiencing *substantial* deterioration of her ability to function independently).

Although Layeni admitted that he could not determine whether E.R. is currently experiencing hallucinations or delusions, the medical records suggest she may be experiencing hallucinations to some degree, reporting that people had been stabbing her with needles, poisoning her, and attempting to medicate her while she slept. Assuming that these scenarios are, in fact, hallucinations and that no one is trying to medicate her while she sleeps or give her injections, we note that evidence of hallucinations or delusions alone is insufficient to justify involuntary commitment on the grounds

16

of mental distress and the deterioration of the ability to function independently. *See C.C.*, 253

S.W.3d at 895;[7] *F.M.*, 183 S.W.3d at 499–500.

> [E]vidence of the effects of mental illness does not necessarily establish evidence of substantial mental or physical deterioration unless the effects impair a person's ability to function independently to provide for basic needs. For example, poor grooming is insufficient "to justify depriving an individual of her liberty." Poor hygiene and "oppositional behavior" also demonstrate mental illness, but alone do not rise to the level of an overt act or pattern of behavior that confirms a substantial deterioration of a person's ability to function independently to provide for her basic needs. Evidence of poor insight and judgment, lack of trust towards others, insomnia, and diminished weight are likewise serious health problems, but they must be coupled with evidence that Armstrong is suffering substantial deterioration of her ability to provide for her basic needs. Although the evidence shows that Armstrong is mentally ill, has physical health problems, and has been previously hospitalized for the mental illness, the State offered no testimony that, as a result of her mental condition, she is unable to function independently as exhibited by her inability to provide for her basic needs.

*Armstrong*, 190 S.W.3d at 252 (citations omitted).

The evidence is legally insufficient to show a recent overt act or continuing pattern of behavior that tends to confirm E.R.'s distress and deterioration of her ability to function.

---

[7]The Dallas court provided a comprehensive list of cases concerning evidence of delusions as it relates to the finding required for court-ordered mental health services. *See C.C.*, 253 S.W.3d at 894–95. A reading of those and other cases would suggest that proposed patients would have had to have done some act or made some omission based on these hallucinations or delusions and that such act or omission demonstrates the deterioration of the ability to function. Such a step is consistent with the statutory requirement that the record demonstrate an overt act or a continuing pattern of behavior.

*(5)    Conclusion*

The evidence is insufficient to show a recent overt act or a continuing pattern of behavior that tends to confirm the likelihood of serious harm to E.R.  Likewise, on the record before us, we cannot say that the evidence would lead a reasonable trier of fact to form a firm belief or conviction that E.R. had engaged in a recent overt act or a continuing pattern of behavior tending to confirm her distress and the deterioration of her ability to function.  *See* TEX. HEALTH & SAFETY CODE ANN. § 574.034(d).

We reverse the trial court's order and render judgment denying the State's application for mental health services.  Having rendered such judgment, we accordingly order E.R.'s immediate release from the institution to which she has been committed.  *See* TEX. HEALTH & SAFETY CODE ANN. § 574.033(b) (Vernon 2003); *see also* TEX. R. APP. P. 43.2(c).  Our mandate will issue immediately upon motion, should appropriate action not be taken in accordance with this opinion.

_____
Josh R. Morriss, III
Chief Justice

Date Submitted:    April 9, 2009
Date Decided:      April 29, 2009

18