**Opinion issued June 30, 2016**



In The

# Court of Appeals

### For The

## First District of Texas

———————————

### NO. 01-15-00784-CV

———————————

### THE STATE OF TEXAS FOR THE BEST INTEREST
### AND PROTECTION OF E.S.R.

---

### On Appeal from Probate Court No. 4
### Harris County, Texas
### Trial Court Case No. I218340

---

## MEMORANDUM OPINION

E.S.R. appeals from an order temporarily committing him for in-patient mental-health services and a second order authorizing the administration of psychoactive medication to him during his commitment.[1] In two issues, E.S.R.

---

[1] The ninety-day period for which the trial court ordered E.S.R. to receive in-patient services and psychoactive medication has expired. The Supreme Court of Texas has

challenges the legal and factual sufficiency of the evidence supporting each order. We affirm.

## Background

E.S.R. is a fifty-nine year old male with a documented history of mental illness. Although he had been living in the Austin area and supporting himself with disability payments, the record reflects that E.S.R. returned to Houston in August 2015 and began living with his parents in their home. E.S.R.'s father filed a sworn application for emergency detention on August 25, 2015, and an application to temporarily commit E.S.R. for mental-health services two days later.[2] An order and warrant to apprehend and detain E.S.R. were issued on August 25, 2015, and E.S.R. was taken to Methodist Hospital for evaluation that same day.

E.S.R. was examined by psychiatrist Ashley Smith, M.D. on August 26, 2015. In her certificate of medical examination, Dr. Smith stated that E.S.R. was brought to Methodist Hospital by police the previous day "after becoming paranoid and delusional at home" and that he had "attempted to get a gun and threatened to kill

---

held that the expiration of the period stated in these orders does not render an appeal of such order moot. *See State v. K.E.W.*, 315 S.W.3d 16, 20 (Tex. 2010); *J.M. v. State*, 178 S.W.3d 185, 189 (Tex. App.—Houston [1st Dist.] 2005, no pet.).

[2] In his sworn affidavit in support of his application to temporarily commit E.S.R. for mental-health services, E.S.R.'s father averred that on August 24, 2015 he heard E.S.R. "rant and yell and threaten" to kill his parents if they attempted to get him psychiatric care, E.S.R. had repeatedly asked his parents to return his gun to him, and that E.S.R. claimed that he was being stalked and being "attacked thru locked doors."

his parents." Dr. Smith diagnosed appellant with "unspecified, psychosis" and opined that he met all of the requirements for involuntary commitment (i.e., that he was likely to cause harm to himself and others, and that he is suffering from severe and abnormal mental, emotional or physical distress). Among other conduct identified in the certificate, Dr. Smith noted that E.S.R. had been attempting to "break through doors at home" and "made several threats towards [his] parents." Dr. Smith concluded that, in her medical opinion, E.S.R. posed an "acute risk to himself and others. He owns a gun and [he] threatened to use it to kill [his] parents."

E.S.R. was also examined by psychiatrist Alric Hawkins, M.D. on August 26, 2015. In his certificate of medical examination, Dr. Hawkins diagnosed E.S.R. with "schizophrenia" and concluded that E.S.R. was mentally ill and that he met two of the three requirements for involuntary commitment (i.e., that E.S.R. was likely to cause harm to others, and is suffering from severe and abnormal mental, emotional or physical distress). Among other conduct identified in the certificate, Dr. Hawkins noted that E.S.R. had threatened to kill his parents.[3]

On September 3, 2015, the court held hearings on E.S.R.'s father's application to temporarily commit E.S.R. for mental-health services, and Dr. Hawkins's petition

---

[3] The State filed both Dr. Hawkins's and Dr. Smith's certificates with the court as required by the Health and Safety Code. *See* TEX. HEALTH & SAFETY CODE ANN. § 574.009 (West 2010) (requiring State to file two certificates of medical examination).

3

for an order to administer psychoactive medication to E.S.R. while he was committed. At that hearing, Dr. Hawkins testified that he had diagnosed E.S.R. with schizophrenia or schizoaffective disorder, and that he had been treating E.S.R. at Methodist Hospital for a little over a week. According to the doctor, E.S.R. routinely refused to take his mediation or cooperate with medical personnel while at the hospital, and he regularly "took the 5th" when Dr. Hawkins asked him questions. Dr. Hawkins described E.S.R.'s behavior over the past week as "pretty irritable," "agitated," and "very argumentative."

As a result of E.S.R.'s uncooperativeness, Dr. Hawkins's testimony at the hearing was based in part upon information he received from E.S.R.'s family, including E.S.R.'s father's applications and supporting affidavit, as well as the medical staff's observations of E.S.R. during the past week. Specifically, Dr. Hawkins testified:

> Well I think some of [E.S.R.'s] behaviors would be described as disorganized and outside the norm. The biggest thing, I think, are his paranoid delusions. He has fear that people are hurting him. That's what brought him in, to the best of our understanding. Per his family, he's concerned that folks are shooting [at him]. The family became concerned after he requested they bring a firearm.

> He also has made threats against the family, or reported allegedly, that if a statement would come to the effect if they had him committed to the psychiatric hospital that he would kill them or harm them in some way—that's what led to my understanding of what sort of all the things that led.

4

And in the hospital, we've seen paranoia, believing things are happening that the staff are not observing, things of that nature.

When asked if E.S.R. was likely to cause serious harm to others as a result of his mental illness if he were released without treatment, Dr. Hawkins testified that he had a "big concern" for the safety of E.S.R.'s family because he believed that E.S.R. was capable of acting on his threat to kill them if they attempted to get him psychiatric care.

E.S.R. testified that he had been living in Austin until a few weeks before the September 3rd hearing. According to E.S.R., someone had been "stalking" him for over two years and when he was assaulted in Austin and he tried to get medical help, the hospital had him "committed." Afterwards, E.S.R. moved to Houston, where he hoped to get help with his "stalker." E.S.R. testified that he believed that his problems were the result of a neurological condition, not a psychiatric disorder. E.S.R. claimed that he needed to consult with a neurologist, not psychiatric care. Although he denied threatening to harm his parents or himself, E.S.R. acknowledged that he had "attempt[ed] to get a gun" but he claimed that he only did so for reasons of "self defense." E.S.R. explained: "I've been stalked and assaulted . . . a number of times. I reported out to five police forces and gotten no actual response or help from them."

At the end of the hearing, the trial judge stated that "the information that's in the two doctors' letters[4] is very compelling, and . . . I wouldn't feel comfortable with myself if I did not commit you based upon the second and third criteria for commitment." he court then proceeded to hear testimony from Dr. Hawkins and E.S.R. with regard to the petition for an order to administer psychoactive medication to E.S.R. during his commitment. At the conclusion of that hearing, the trial court ordered E.S.R. temporarily committed for mental-health services and authorized administration of psychoactive medication to E.S.R. during his commitment. E.S.R. is appealing both orders.

## Sufficiency of the Evidence Supporting Commitment Order

In his first issue, E.S.R. argues that there is legally and factually insufficient evidence to support the trial court's order temporarily committing him for in-patient mental-health services.

### A. Standard of Review

To obtain an order for temporary commitment, the State must prove its case by clear and convincing evidence. *See* TEX. HEALTH & SAFETY CODE ANN.

---

[4] Although sworn to and filed with the court, neither Dr. Smith's nor Dr. Hawkins's certificates of medical evaluation were formally admitted into evidence. We note, however, that E.S.R.'s counsel did not object when the trial court expressly stated on the record that it was going to order E.S.R. to be temporarily committed for mental-health services based in part upon these documents. The court's judgment also states that "considering all of the evidence, testimony, and Certificates filed herein," the court found that E.S.R. met all of the statutory requirements for temporary commitment.

6

§ 574.034(a), (West Supp. 2015), § 574.106(a-l) (West 2010). In this context, "clear and convincing evidence" means "that measure or degree of proof which will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." *State v. Addington*, 588 S.W.2d 569, 570 (Tex. 1979).

Because the State's burden of proof is clear and convincing evidence, we apply a heightened standard of review to sufficiency-of-the-evidence challenges. *See In re C.H.*, 89 S.W.3d 17, 25 (Tex. 2002). When reviewing the legal sufficiency of the evidence in a case requiring proof by clear and convincing evidence, we determine whether the evidence is such that a factfinder could reasonably form a "firm belief or conviction as to the truth of the allegations sought to be established." *State v. K.E.W.*, 315 S.W.3d 16, 20 (Tex. 2010) (*K.E.W. I*) (quoting *Addington*, 588 S.W.2d at 570). We examine all evidence in the light most favorable to the finding, including every reasonable inference in favor of those findings, and assume that the factfinder resolved any disputed facts in favor of its finding, so long as a reasonable factfinder could do so. *See In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002); *see generally In re T.N.*, 180 S.W.3d 376, 382 (Tex. App.—Amarillo 2005, no pet.) (concerning appellate review of judgment rendered on clear-and-convincing proof, providing, "The reviewing court must recall that the trier of fact has the authority to

weigh the evidence, draw reasonable inferences therefrom, and choose between conflicting inferences.").

Likewise, the higher burden of proof alters the appellate standard of review for factual sufficiency. *C.H.*, 89 S.W.3d at 25–26. In reviewing the evidence for factual sufficiency under the clear and convincing standard, we inquire "whether the evidence is such that a factfinder could reasonably form a firm belief or conviction about the truth of the State's allegations." *See id.* at 25. We consider whether disputed evidence is such that a reasonable factfinder could not have resolved that disputed evidence in favor of its finding. *In re J.F.C.*, 96 S.W.3d at 266; *K.E.W. v. State*, 333 S.W.3d 850, 855 (Tex. App.—Houston [1st Dist.] 2010, no pet.) (remanded from Supreme Court of Texas) (*K.E.W. II*). In so doing, we must give "due consideration to evidence that the factfinder could reasonably have found to be clear and convincing." *See In re J.F.C.*, 96 S.W.3d at 266. We examine the entire record to determine whether "the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction"; if it is, the evidence is factually insufficient. *Id.*; *K.E.W. II*, 333 S.W.3d at 855.

## B. Statutory Requirements for Temporary Commitment

Texas Health and Safety Code subsection 574.034(a) provides that the judge may order a proposed patient to receive court-ordered temporary in-patient mental

health services only if the judge or a jury finds, from clear and convincing evidence, that:

> (1) the proposed patient is mentally ill; and
>
> (2) as a result of that mental illness the proposed patient:
>
>> (A) is likely to cause serious harm to himself;
>>
>> (B) is likely to cause serious harm to others; or
>>
>> (C) is:
>>
>>> (i) suffering severe and abnormal mental, emotional, or physical distress;
>>>
>>> (ii) experiencing substantial mental or physical deterioration of the proposed patient's ability to function independently, which is exhibited by the proposed patient's inability, except for reasons of indigence, to provide for the proposed patient's basic needs, including food, clothing, health, or safety; and
>>>
>>> (iii) unable to make a rational and informed decision as to whether or not to submit to treatment.

TEX. HEALTH & SAFETY CODE ANN. § 574.034(a).

Subsection 574.034(c) requires that, if the judge or a jury finds that the proposed patient meets the commitment criteria prescribed by subsection (a), the judge or the jury must specify which criterion listed in subsection (a)(2) forms the basis for that decision. *Id.* § 574.034(c). The Health and Safety Code further requires that, to be clear and convincing under subsection 574.034(a), the evidence must

include expert testimony and, unless waived, evidence of a recent overt act or a continuing pattern of behavior that tends to confirm:

> (1) the likelihood of serious harm to the proposed patient or others; or
>
> (2) the proposed patient's distress and the deterioration of the proposed patient's ability to function.

*Id.* § 574.034(d).

The Supreme Court of Texas has concluded that the term "overt act," found in subsection 574.034(d), is not limited to physical conduct but may be any action objectively perceivable, including verbal statements. *K.E.W. I*, 315 S.W.3d at 22. More specifically, the court determined that "a proposed patient's words are overt acts within the meaning of Section 574.034(d)." *Id.* A proposed patient's statements "can be relevant both to determining whether he is mentally ill and also to predicting what actions he might or will take in the future as a result of mental illness." *Id.* The statute permits "the law's intervention to prevent serious injury to others" when a person with a mental illness makes statements that foreshadow violence. *Id.*

The statutory language does not require evidence of a recent overt act that, by itself, proves the likelihood that a proposed patient will cause serious harm to others. *Id.* at 22. Rather, the statute requires evidence of an overt act that "tends to confirm" the "likelihood" of serious harm to others. *Id.* at 23 (citing TEX. HEALTH & SAFETY CODE ANN. § 574.034(d)(1)). "[A] recent overt act by a proposed patient 'tends to

confirm' that the patient poses a likelihood of serious harm to others within the meaning of Section 573.034(d) if the overt act is to some degree probative of a finding that serious harm is probable. . . ." *K.E.W. I*, 315 S.W.3d at 24. This is true even though the overt act itself may not be dangerous. *Id.* The court determined that the statutory language is sufficiently broad to allow commitment regardless of whether the person's threat actually causes physical harm. *See id.* at 22.

Here, the trial court indicated that it based the commitment order on two of the statutory criteria listed in subsection (a)(2), namely, that E.S.R.: (1) was likely to cause serious harm to others, TEX. HEALTH & SAFETY CODE ANN. § 574.034(a)(2)(B), and (2) is suffering severe and abnormal mental, emotional, or physical distress and experiencing substantial mental or physical deterioration of his ability to function independently, which is exhibited by his inability to provide for his basic needs, including food, clothing, health, or safety, and that he is not able to make a rational and informed decision as to whether or not to submit to treatment. *Id.* § 574.034(a)(2)(C). E.S.R., who does not dispute the trial court's finding that he is mentally ill, argues on appeal that there is legally and factually insufficient evidence to support both of these findings.

We will affirm the trial court's commitment order if there is legally and factually sufficient evidence supporting any finding under section 574.034(a)(2). *See Mezick v. State*, 920 S.W.2d 427, 431 (Tex. App.—Houston [1st Dist.] 1996, no pet.)

11

(citations omitted) (finding that because one statutory criterion was met, reviewing court was not required to decide whether second criterion met).

## C.      Harm to Others – Section 574.034(a)(2)(B)

E.S.R. argues that there is legally and factually insufficient evidence to support the trial court's finding that he was likely to cause serious harm to others if he was not committed for temporary inpatient treatment because Dr. Hawkins's testimony only establishes that E.S.R. "might" cause harm to someone else, and Dr. Hawkins never testified as to the date that E.S.R. allegedly threatened to kill his family. E.S.R. also points to his testimony denying that he threatened to harm his parents.

### 1.      Legal Sufficiency

To support commitment in this case, the State needed to present clear and convincing evidence of a recent act by E.S.R., either physical or verbal, that can be objectively perceived, and that is to some degree probative of a finding that serious harm to others is probable if E.S.R. is not treated. *See K.E.W. I*, 315 S.W.3d at 24. Here, the evidence of E.S.R.'s verbal threat to kill his parents if they had him committed for psychiatric care is such an act.

Specifically, at the September 3, 2015 hearing, Dr. Hawkins testified that E.S.R. had been receiving in-patient psychiatric care for the past week because his family had reported that E.S.R. was acting paranoid and delusional, he believed that

12

people were shooting at him, and he had requested the return of his gun and threatened to kill his family members if they had him committed to a psychiatric hospital. The court could also take judicial notice of the fact that E.S.R.'s father had filed an application for E.S.R.'s emergency detention on August 25, 2015, and an application to temporarily commit E.S.R. for mental-health services on August 27, 2015—approximately one week before the hearing.

At that hearing, E.S.R. testified that he did not move to Houston until August 2015. He admitted that he had attempted to get a gun, as his family claimed, but he argued that he did so for "self defense" because someone was stalking him. Dr. Hawkins testified that he was concerned about E.S.R.'s family's safety if E.S.R. was released without treatment, because he believed that E.S.R. was capable of acting on his threat to kill them. In her August 26, 2015 certificate of medical examination which was expressly relied upon by the court, Dr. Smith also opined that E.S.R. posed an "acute risk to himself and others. He owns a gun and [he] threatened to use it to kill [his] parents." Although there is no testimony as to the exact date on which E.S.R. allegedly threatened to kill his parents, the trial court could reasonably infer from the testimony and the certificates that the threats had been made recently. *See* TEX. HEALTH & SAFETY CODE ANN. § 574.034(d) (requiring evidence of recent overt act that tends to confirm likelihood of serious harm to others); *see generally G.H. v. State*, No. 01–13–000422–CV, 2013 WL 5613457, at \*6 (Tex. App.—Houston [1st

13

Dist.] Oct. 10, 2013, no pet.) (holding evidence sufficient to support finding that patient was likely to cause serious harm to others because, even though witness did not testify as to when verbal threats were allegedly made, it was apparent from context that threats had recently occurred). *Cf. In re T.N.*, 180 S.W.3d at 382 (recognizing factfinder's right to draw reasonable inferences from evidence).

Citing to *State ex rel. E.R.*, 287 S.W.3d 297, 305 (Tex. App.—Texarkana 2009, no pet.), E.S.R. argues that evidence that he "might" cause harm to others is insufficient. *State ex rel. E.R.* is factually distinguishable. Unlike the present situation, the doctor in *State ex rel. E.R.* testified that if E.R. was not treated, she could become withdrawn and paranoid, and stop eating, and, in the unlikely worst-case scenario, her refusal of treatment could lead to her death by starvation. *Id.* The appellate court determined that such testimony did not tend to confirm the likelihood of serious harm to E.R., stating: "While we recognize this scenario as a compelling possibility that should cause concern, it remains just that, a possibility. There is no evidence that would suggest that E.R. has suffered any of the effects of starvation and no evidence that starvation or other ill effects were likely." *Id.*

Unlike the doctor in *State ex rel. E.R.* who testified that it was unlikely that E.R.'s rejection of treatment would lead to her death by starvation, Dr. Smith opined that E.S.R. posed "an acute risk" to his parents because he had threatened to kill them with his gun, and Dr. Hawkins testified that he believed that E.S.R. was capable

of acting on his threat to kill his family and he was concerned for their safety if E.S.R. was released without treatment. Thus, unlike in *State ex rel. E.R.*, the record in this case "tends to confirm" the "likelihood" of serious harm to others if E.S.R. is released without treatment, not merely the unlikely possibility that such harm might occur.

We conclude that the State introduced legally sufficient evidence to prove an overt act by E.S.R. that tended to confirm the likelihood of serious harm to others; that is, after examining all of the evidence in the light most favorable to the finding, including all reasonable inferences in support of the finding, we conclude that a reasonable trier of fact could have formed a firm belief or conviction that it was probable that E.S.R. was likely to cause serious harm to others if not treated. *See* TEX. HEALTH & SAFETY CODE ANN. § 574.034(a)(2)(B); *see also id.* § 574.034(d). Accordingly, we hold that the evidence is legally sufficient to support the trial court's order for temporary inpatient mental health services.

### 2. Factual Sufficiency

Having determined that the evidence is legally sufficient to support the order, we address factual sufficiency and consider all the evidence, both that in support of and contrary to the trial court's findings. *In re C.H.*, 89 S.W.3d at 25. Although E.S.R. denied threatening to harm his parents, in light of the entire record, including both doctor's statements to the contrary and E.S.R.'s repeated claims to be the victim

15

of a stalker, his denial of having any need for psychiatric care, and his admission that he attempted to acquire a gun, we cannot say that E.S.R.'s testimony is so significant that a reasonable trier of fact could not have reconciled this evidence in favor of its finding and formed a firm belief or conviction that E.S.R. was mentally ill and, as a result of that illness, was likely to cause serious harm to others if not treated. *See* TEX. HEALTH & SAFETY CODE ANN. §§ 574.034(a)(2)(C), (d); *In re J.F.C.*, 96 S.W.3d at 266. Accordingly, we hold that the evidence is factually sufficient to support the trial court's order for temporary inpatient mental health services.

Having determined that there is legally and factually sufficient evidence supporting the trial court's finding under section 574.034(a)(2)(B), we need not consider E.S.R.'s challenge to the sufficiency of the evidence supporting the court's finding under section 574.034(a)(2)(C). *See Mezick*, 920 S.W.2d at 431.

We overrule E.S.R.'s challenge to the sufficiency of the evidence supporting the temporary commitment order.

### Sufficiency of the Evidence Supporting Medication Order

In his second issue, E.S.R. argues that there is legally and factually insufficient evidence to support the trial court's order authorizing the administration of psychoactive medication. Specifically, E.S.R. contends that because the trial court's order for involuntary commitment is not supported by sufficient evidence, there is

16

no underlying predicate commitment order authorizing the medication order. *See* TEX. HEALTH & SAFETY CODE ANN. § 574.106(a)(1) (order authorizing administration of psychoactive medication may be entered only if patient is under valid order for temporary or extended mental health services). Because we have concluded that the involuntary commitment order is supported by legally and factually sufficient evidence, we overrule E.S.R.'s challenge to the sufficiency of the evidence supporting the medication order. *See K.E.W. II*, 333 S.W.3d at 858–59 (affirming order to administer psychoactive medication when only argument offered challenging order was that evidence was insufficient to support commitment order).

**Conclusion**

We affirm the trial court's order committing E.S.R. for temporary inpatient mental health services and its order authorizing the administration of psychoactive medication to E.S.R.

Russell Lloyd
Justice

Panel consists of Justices Bland, Brown, and Lloyd.