

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-10-00124-CV

_____

THE STATE OF TEXAS FOR THE BEST
INTEREST AND PROTECTION OF E.R.

On Appeal from the County Court at Law No. 2
Hunt County, Texas
Trial Court No. M-09853

Before Morriss, C.J., Carter and Moseley, JJ.
Memorandum Opinion by Justice Carter

MEMORANDUM OPINION

In this accelerated appeal, we are called upon to determine whether the evidence is legally sufficient to support the trial court's order committing E.R. to receive inpatient mental health services for a period of not more than ninety days. Because we find the evidence to be legally insufficient to support the commitment order, we reverse the judgment of the trial court and render judgment denying the application for court-ordered temporary mental health services.

## I.     FACTUAL BACKGROUND

E.R. is a thirty-eight-year-old female who has been diagnosed with chronic paranoid schizophrenia, an illness with which she has struggled for a lengthy period of time. In the thirty- to sixty-day period prior to the implementation of court-ordered temporary mental health services, E.R. would not let her mother, who regularly brings her groceries, into the apartment where E.R. resides. E.R.'s mother was able to enter the apartment the day prior to E.R.'s evaluation, however. At that time, the apartment was extremely unclean, and smelled bad. According to her mother, E.R. suffered from swine flu the year prior to her hospitalization, and while E.R. was doing well prior to that time, E.R.'s condition has deteriorated since then and she has been suffering from seizures. E.R.'s seizures cause extreme headaches, but do not cause her to shake or to lose consciousness. E.R. refuses to take her anti-psychotic medication as she believes it to be poison. After some initial complaints that her anti-seizure medication was also poisoned, E.R.

2

has resumed taking her Dilanton and has acknowledged her need to take Dilanton for the remainder of her life. According to her mother, E.R. lost twenty to thirty pounds "here recently."

The jury in E.R.'s case found from clear and convincing evidence that E.R. was mentally ill and that as a result of such mental illness, she is likely to cause serious harm to herself. The jury further found that as a result of her mental illness, E.R. was suffering severe and abnormal mental, emotional, or physical deterioration of her ability to function independently, exhibited by her inability, except for reasons of indigence, to provide for her basic needs, including food, clothing, health, or safety, and that E.R. was not able to make a rational and informed decision as to whether to submit to treatment.

## II. APPLICABLE LAW

### A. Statutory Requirements

A trial court may order the temporary inpatient mental health services of a proposed patient only if the fact-finder concludes, from clear and convincing evidence, that the proposed patient is mentally ill, and also satisfies at least one of subparagraphs (A), (B), and (C) of Section 574.034(a)(2) of the Texas Health and Safety Code:

> (2) as a result of that mental illness the proposed patient:
> (A) is likely to cause serious harm to himself;
> (B) is likely to cause serious harm to others; or
> (C) is:
> (i) suffering severe and abnormal mental, emotional, or physical distress;
> (ii) experiencing substantial mental or physical deterioration of the proposed patient's ability to function independently, which is exhibited

3

by the proposed patient's inability, except for reasons of indigence, to provide for the proposed patient's basic needs, including food, clothing, health, or safety; and

     (iii)   unable to make a rational and informed decision as to whether or not to submit to treatment.

TEX. HEALTH & SAFETY CODE ANN. § 574.034(a)(2) (Vernon 2010). If the judge or jury finds that the proposed patient meets the prescribed commitment criteria, it must then specify which criterion forms the basis of the decision. TEX. HEALTH & SAFETY CODE ANN. § 574.034(c) (Vernon 2010). Here, mental illness is not disputed, and there is no claim E.R. is a threat to others. Rather, E.R. contends that the evidence was insufficient to support the findings that she was likely to cause serious harm to herself and that she experienced mental or physical deterioration to the point that she cannot function independently due to the inability to provide for her basic needs, including food, clothing, health, or safety. *See* TEX. HEALTH & SAFETY CODE ANN. § 574.034(a)(2)(A), (C). The court's written order affirmatively found the State's allegations under subsections 2(A) and 2(C) to be true.

## B.    The State's Burden

"[A] State cannot constitutionally confine without more a nondangerous individual who is capable of surviving safely in freedom by himself or with the help of willing and responsible family members or friends." *O'Connor v. Donaldson*, 422 U.S. 563, 576 (1975). The requirements for an involuntary commitment are strict because an involuntary commitment is a drastic measure. *In re Breeden*, 4 S.W.3d 782, 789 (Tex. App.—San Antonio 1999, no pet.).

4

The evidentiary standards for involuntary commitment are high. *State ex rel. E.E.*, 224 S.W.3d 791, 794 (Tex. App.—Texarkana 2007, no pet.); *Harris v. State*, 615 S.W.2d 330, 333 (Tex. Civ. App.—Fort Worth 1981, writ ref'd n.r.e.). The State has the burden of establishing by clear and convincing evidence that the proposed patient meets at least one of the additional criteria listed in Section 574.034(a)(2). *State ex rel. L.H.*, 183 S.W.3d 905, 909 (Tex. App.—Texarkana 2006, no pet.); *Mezick v. State*, 920 S.W.2d 427, 430 (Tex. App.—Houston [1st Dist.] 1996, no writ). Clear and convincing evidence is that measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established. TEX. CIV. PRAC. & REM. CODE ANN. § 41.001(2) (Vernon 2008); *State v. K.E.W.*, 315 S.W.3d 16, 20 (Tex. 2010); *State v. Addington*, 588 S.W.2d 569, 569, 570 (Tex. 1979). Section 574.034(d) specifically requires that, to be clear and convincing, the evidence must, unless waived, include expert testimony and evidence of a recent overt act or a continuing pattern of behavior that tends to confirm "(1) the likelihood of serious harm to the proposed patient or others; or (2) the proposed patient's distress and the deterioration of the proposed patient's ability to function." TEX. HEALTH & SAFETY CODE ANN. § 574.034(d) (Vernon 2010). The overt act or continuing pattern of behavior "must relate to the criterion on which the judgment is based." *J.M. v. State*, 178 S.W.3d 185, 193 (Tex. App.—Houston [1st Dist.] 2005, no pet.). The threat of harm must be substantial and based on actual dangerous behavior manifested by some overt act or threats in the recent past. *Id.*; *State ex rel. K.D.C.*, 78 S.W.3d 543, 547 (Tex. App.—Amarillo 2002, no pet.).

5

**C. Standards of Review**

Because the State's burden of proof is clear and convincing evidence, we apply a heightened standard of review. *See K.E.W.*, 315 S.W.3d at 20; *In re C.H.*, 89 S.W.3d 17, 25 (Tex. 2002). To review the legal sufficiency of the evidence where the burden of proof is clear and convincing evidence, we review all the evidence in the light most favorable to the finding to determine whether a reasonable fact-finder could have formed a firm belief or conviction that the finding was true. *See K.E.W.*, 315 S.W.3d at 20; *In re J.F.C.*, 96 S.W.3d 256, 262–66 (Tex. 2002). Disputed fact questions are resolved in favor of the finding if a reasonable fact-finder could have done so, and we disregard all contrary evidence unless a reasonable fact-finder could not have done so. *City of Keller v. Wilson*, 168 S.W.3d 802, 817 (Tex. 2005); *see J.F.C.*, 96 S.W.3d at 267–68.

## III. ANALYSIS

While E.R. does not challenge the determination that she was mentally ill, she does challenge the evidence supporting the findings required pursuant to Section 574.034, arguing that the State failed to present sufficient evidence of a recent overt act or continuing pattern of behavior that tends to confirm the likelihood of serious harm to E.R. or that tends to confirm E.R.'s distress and the deterioration of her ability to function.

We examine the record to determine the existence of evidence of a recent overt act or a continuing pattern of behavior that confirms that E.R. is likely to harm herself or that tends to

6

confirm E.R.'s distress and the deterioration of her ability to function. Gurjeet Kalra is a medical doctor specializing in psychiatry and is a member of E.R.'s treatment team. Kalra performed a psychiatric evaluation and diagnosed E.R. with chronic paranoid schizophrenia, as a result of which E.R. experiences symptoms of delusions, hallucinations, irritability, and paranoia. Kalra's certificate of medical examination states that E.R. is psychotic and reportedly is not able to take care of herself, that she is "not eating and has lost 20 lbs," and "according to the emergency detention paper work, they have seen maggots in the patient's toilet." Kalra added notations to his certificate that concerned E.R.'s visual and auditory hallucinations, agitated behavior, making paranoid statements, threatening to "see you in court," poor dress and grooming, refusal to take medication, and poor insight and judgment. These notations do not reveal the significance of the noted actions.

Dr. Dante Burgos' certificate of medical examination cited the following details as support for his opinion that E.R. is likely to cause serious harm to herself: "erratic and aggressive behavior." Burgos added notations to his certificate that concerned E.R.'s paranoia as evidenced in such statements as "Dr. Kalra is trying to expose himself," "Ya'll are selling my drugs," "My mother is stealing my money," and that E.R. threatened a caseworker and her mother, has auditory hallucinations, and has refused to take her medications for weeks. Again, these notations do not reveal the significance of the noted actions.[1]

_____

[1]To the extent these notations provide support for Burgos' opinion that E.R. is likely to cause serious harm to others if not immediately restrained, we need not consider them, in light of the fact the jury was not asked to make such a

7

An expert opinion recommending involuntary commitment must be supported by the factual bases on which it is grounded and not simply recite the statutory criteria. *J.M.*, 178 S.W.3d at 193. Rather, the expert must describe the patient's specific behaviors on which his or her opinion is based. *See K.D.C.*, 78 S.W.3d at 550. Evidence establishing that an individual is mentally ill is not evidence that the statutory standard for involuntary commitment has been satisfied. *J.M.*, 178 S.W.3d at 193. We examine the evidence offered by the State in light of these principles to determine whether the record reflects clear and convincing proof that E.R. should be subject to temporary mental health services.

## A.     The Likelihood of Serious Harm to E.R.

Kalra testified that E.R. is likely to cause serious harm to herself, basing his opinion on her refusal to take medication and her failure to eat. Kalra's certificate of medical examination provided the following bases for his opinion that E.R. poses a risk of serious harm to herself: patient is extremely psychotic and is reportedly not able to take care of herself, her living conditions are less than acceptable, she is not eating and has lost twenty pounds, and emergency detention paperwork notes maggots in patient's toilet. Burgos' certificate of medical examination cited the following details as support for his opinion that E.R. is likely to cause serious harm to

---

finding. Further, the recent overt act or continuing pattern of behavior must relate to the criterion on which the judgment is based. *State ex rel. C.O.*, 65 S.W.3d 175, 181 (Tex. App.—Tyler 2001, no pet.). Evidence of E.R.'s aggressiveness or threatening behavior toward family or caseworkers does not tend to confirm the likelihood that E.R. would cause serious harm to herself.

herself: erratic and aggressive behavior. He added notations to the certificate regarding refusal of medication, paranoid ideation, loud paranoid speech, and auditory hallucinations.

Many of these behavioral characteristics, such as paranoid ideation, loud paranoid speech, auditory hallucinations, and being "extremely psychotic" amount simply to evidence confirming that E.R. is mentally ill. As such, this evidence is insufficient to meet the evidentiary standard for court-ordered mental health services. *C.O.*, 65 S.W.3d at 182. Moreover, psychotic behavior alone is insufficient to justify commitment, and is no evidence of a continuing pattern of behavior that tends to confirm the likelihood of serious harm to E.R. *See T.G. v. State*, 7 S.W.3d 248, 252 (Tex. App.—Dallas 1999, no pet.).

There is also evidence that, at some point, E.R. was not eating and had lost twenty pounds. According to Vivian Anderson, E.R.'s mother, E.R. lost between twenty and thirty pounds "here recently." A proposed patient's refusal to eat may be sufficient evidence to support an order for temporary commitment when there is specific evidence of the patient's refusal and the resulting harm that refusal has caused the proposed patient. *See State ex rel. Y.A-Y.*, No. 12-03-00242-CV, 2004 WL 35811, at *9 (Tex. App.—Tyler Jan. 8, 2004, no pet.) (mem. op.) (complete refusal to eat or drink for several days could result in weight loss and could lead to dehydration, failure of bodily functions, and death).

Conversely, where there is no evidence that the refusal to eat results in harm to the proposed patient, such evidence is insufficient to prove the likelihood of serious harm to the

9

patient.  *See K.T. v. State*, 68 S.W.3d 887, 893 (Tex. App.—Houston [1st Dist.] 2002, no pet.) (no evidence that refusal to eat resulted in malnutrition or other harm); *see also Breeden*, 4 S.W.3d at 788–89 (finding no evidence of overt act or continuing pattern of behavior, even though doctors testified patient was not eating properly and refusing medication, because medical testimony did not show malnutrition, but did show patient's dietary and medication decisions were based on his concern for animal rights).

Here, we were only told that E.R. was not eating at some point and lost twenty or thirty pounds "here recently."  We have been provided minimal information regarding E.R.'s refusal to eat.  For example, we are not told when E.R. initially refused to eat, if that refusal is or was total or partial, how long such refusal has been or was ongoing, or what ill health effects, if any, have resulted from E.R.'s refusal to eat.  When asked her opinion as to the cause of E.R.'s weight loss, Anderson testified, "I really don't know.  I don't know if it's the brain lesions, is it the mental illness."  The information regarding E.R.'s weight loss is not supported by specifics and is not placed in any type of meaningful context in order to determine whether E.R.'s weight loss did, in fact, result in ill health consequences.  For some, the loss of twenty pounds would be a health benefit, rather than a detriment.  Absent the provision of significant details such as the amount of the loss; the time period over which the weight loss occurred; her current height and weight; and the detrimental effects, if any, such weight loss had (or in reasonable medical probability could

10

have) on E.R.'s health, it would be speculative to conclude that E.R.'s refusal to eat is evidence of an overt act that tends to confirm the likelihood of serious harm to E.R.

Kalra testified that it was reported that while E.R. was at home, she was "refusing to eat," and if not treated, there is a high probability that she may not eat, which could result in her starvation. There is no evidence in the record, however, that E.R. has refused to eat after detention at the hospital.[2] The evidence does not support a finding that E.R. has placed her health in jeopardy by failing to eat or to show a risk of harm to E.R. Evidence that the proposed patient *might* cause serious harm to herself is insufficient to satisfy the statutory requirements. *State ex rel. E.R.*, 287 S.W.3d 297, 304 (Tex. App.—Texarkana 2009, no pet.); *see State ex rel. L.C.F.*, 96 S.W.3d 651, 657 (Tex. App.—El Paso 2003, no pet.).

Kalra further testified that E.R. suffers from a seizure disorder. E.R. takes Dilanton for her seizures, which Anderson describes as more akin to severe headaches than what typically is envisioned as a grand mal seizure. In other words, E.R.'s seizures do not cause her to convulse or to lose consciousness. Kalra testified that at times, E.R. still refuses to take her Dilanton. Without it, she may have seizures. According to Kalra, there is the concern that she "will stop taking her anti-seizure medicine and . . . she might have more frequent seizures." Kalra testified that "people do die because of uncontrolled seizures or because of the seizure disorder." There is

---

[2]An order to detain E.R. and place her in the Hunt Regional Behavioral Hospital was issued October 27, 2010. Dr. Kalra initially saw her October 28. An order was issued October 29 detaining E.R. in the hospital. The jury trial was conducted November 8. It appears E.R. had been detained at the hospital from either October 28 or 29 until the hearing on November 8, 2010.

11

no testimony that E.R. is not taking her Dilanton on a regular basis or that E.R. will experience uncontrolled seizures in the circumstance she does not take her Dilanton. Kalra's testimony regarding what *could* happen in the future and the generic statement that "people" die "because of uncontrolled seizures" is not sufficient to satisfy the statutory requirement of clear and convincing evidence of a recent overt act or continuing pattern of behavior that tends to confirm the likelihood of serious harm to E.R. *See L.C.F.*, 96 S.W.3d at 657.

Additional testimony from Anderson regarding the risk of serious harm to E.R. revealed her concern that E.R. might start a fire using the stovetop or oven. This concern is based on statements from E.R. that E.R. has, at some point in the past, left the stovetop or oven on while cooking. We note that Anderson's testimony does not state when the stovetop or oven was left on, whether this occurred only once or on more than one occasion, or whether dire consequences resulted. As such, Anderson's testimony is no evidence of a recent overt act or a continuing pattern of behavior that tends to confirm the likelihood of serious harm to E.R. *See T.G.*, 7 S.W.3d at 251 (a single possible incident of leaving gas burners on was not evidence of recent overt act or continuing pattern of behavior).

Because there is no evidence of a recent overt act or continuing pattern of behavior that tends to confirm that E.R. is likely to cause serious harm to herself, we conclude that the evidence is legally insufficient to support involuntary commitment under Section 574.034(a)(2)(A). *See* TEX. HEALTH & SAFETY CODE ANN. § 574.034(a)(2)(A), (d)(1).

12

**B.      Ability to Function Independently**

We next examine the record for evidence of a recent overt act or a continuing pattern of behavior that confirms the multifaceted finding under Section 574.034(a)(2)(C).[3]   For this evidence to meet the clear and convincing standard, it must show a recent overt act or a continuing pattern of behavior that tends to confirm the proposed patient's distress and the deterioration of the proposed patient's ability to function.   TEX. HEALTH & SAFETY CODE ANN. § 574.034(d)(2). Kalra's testimony suggested that E.R.'s condition will deteriorate as a result of the cessation of medication for her mental illness.   There is also some testimony regarding E.R.'s living conditions and ability to function independently.   We will discuss each item of evidence in turn.

First, Kalra testified that E.R. has been prescribed Risperdal and Prolexian, medications used in the treatment of schizophrenia.[4]   E.R. does not want to take the psychoactive medication because she believes they worsen her condition.   Kalra opines that because E.R. has ceased taking her psychoactive medications, she is overtly psychotic and has been observed talking to herself and laughing inappropriately.   She experiences visual and auditory hallucinations.   E.R. accused

---

[3]We must find sufficient evidence of the following three elements:  (1) patient is suffering severe and abnormal mental, emotional, or physical distress; (2) patient is experiencing substantial mental or physical deterioration of the proposed patient's ability to function independently, which is exhibited by the proposed patient's inability, except for reasons of indigence, to provide for the proposed patient's basic needs, including food, clothing, health, or safety; and (3) patient is unable to make a rational and informed decision as to whether or not to submit to treatment.   TEX. HEALTH & SAFETY CODE ANN. § 574.034(a)(2)(C).   This must be shown by evidence of a recent overt act or a continuing pattern of conduct that tends to confirm:  (1) the likelihood of serious harm to the proposed patient or others; or (2) the proposed patient's distress and the deterioration of the proposed patient's ability to function.   TEX. HEALTH & SAFETY CODE ANN. § 574.034(d).

[4]E.R. is taking her Dilanton for seizures most of the time.

13

Kalra of poisoning her food and her medicine and accused Kalra, along with Anderson, of stealing her money. Kalra opined that, if left untreated, E.R.'s condition will continue to deteriorate to the point where she will not be able to take care of herself. "If untreated she will deteriorate to the point she will be unable to meet her personal hygiene, grooming, feeding, eating." This condition has been ongoing since admission; Kalra has no knowledge of how long this behavior may have existed prior to admission. Because of her psychotic condition at this time, Kalra opines that E.R. is unable to make a rational and informed decision as to whether or not to submit to treatment.

Expert opinions recommending involuntary commitment must be supported by a showing of the factual bases on which they are grounded. *J.M.*, 178 S.W.3d at 193. Kalra's testimony, required under the statute to support commitment, does not provide evidence of a recent overt act or a continuing pattern of behavior confirming E.R.'s distress and deterioration of her ability to function. Evidence of refusal to take medication alone is insufficient evidence of an overt act or continuing pattern of behavior tending to confirm a proposed patient's distress or deterioration of the ability to function. *E.R.*, 287 S.W.3d at 306; *Armstrong v. State*, 190 S.W.3d 246, 252–54 (Tex. App.—Houston [1st Dist.] 2006, no pet.). Allowing the refusal of treatment or medication to justify commitment has been classified as "tautological reasoning"—one may be involuntarily committed and treated because the patient does not consent to voluntary treatment. "[S]uch circular reasoning is not legally sufficient to support a deprivation of [the patient's] liberty by temporary involuntary commitment." *J.M.*, 178 S.W.3d at 195. Moreover, evidence of

14

hallucinations or delusions without more is insufficient to justify involuntary commitment on the grounds of mental distress and the deterioration of the ability to function independently. *E.R.*, 287 S.W.3d at 306; *C.O.*, 65 S.W.3d at 182. Evidence of E.R.'s delusions and hallucinations confirm that E.R. is mentally ill, and we do not question Kalra's conclusion that E.R. would benefit from hospitalization. However, an expert medical diagnosis of mental illness alone is not enough to support involuntary commitment. *E.E.*, 224 S.W.3d at 794. E.R.'s agitated behavior, poor insight, judgment and paranoia are evidence of mental illness, but these symptoms are insufficient to support a finding that involuntary commitment on the grounds of mental distress and the ability to function independently is warranted. *See Armstrong*, 190 S.W.3d at 252 (evidence of effects of mental illness does not necessarily establish evidence of substantial mental or physical deterioration unless effects impair ability to function independently or provide for basic needs); *see also T.G.*, 7 S.W.3d at 251–52 (finding physician's diagnosis that appellant suffered from "psychosis NOS" not sufficient to support commitment). Evidence that merely reflects that an individual is mentally ill and in need of hospitalization is no evidence the statutory standard has been met. *K.T.*, 68 S.W.3d at 893; *Broussard v. State*, 827 S.W.2d 619, 622 (Tex. App.—Corpus Christi 1992, no writ).

Further, we note that Kalra testified in terms of future deterioration of E.R.'s condition, to the point of being unable to meet her personal needs. Evidence that the proposed patient will experience substantial mental or physical deterioration in the future does not establish the patient's

current inability to function. *See Armstrong*, 190 S.W.3d at 252–53 (evidence showed only that patient was deteriorating due to her refusal to take medications for her chronic health problems, not that she was currently experiencing substantial deterioration of her ability to function independently).

Anderson testified that she has taken E.R. in for treatment for psychiatric assistance five times in the past four years. E.R.'s condition has become "extremely worse" than it was in the previous year. Anderson testified that she does all of E.R.'s grocery shopping because E.R. won't leave her apartment. Anderson delivers the groceries to E.R. at her apartment. When she last visited E.R.'s apartment the day prior to E.R.'s psychiatric evaluation, there were dishes piled all over the living room and in the kitchen, and there was trash all over the floor. Anderson pays E.R.'s rent for her apartment, along with the electric bill.[5] In addition, Anderson provides cash to E.R. each week along with a roll of quarters so that she can do her laundry, but E.R. does not do the laundry; instead, she spends the money on cigarettes.

Anderson's testimony reveals that E.R. does not live in a clean environment. It also establishes that Anderson cares for her daughter with respect to the tasks she performs on her behalf, but her testimony does not affirmatively establish that E.R. is incapable of providing for her basic needs, including "food, clothing, health, or safety." TEX. HEALTH & SAFETY CODE ANN. § 574.034(a)(2)(C)(ii). Said another way, Anderson's testimony does not provide clear and

---

[5]E.R. receives social security benefits and food stamps.

convincing proof of a recent overt act or continuing pattern of behavior that tends to confirm deterioration of E.R.'s ability to function independently. *See In re J.S.C*., 812 S.W.2d 92, 95–96 (Tex. App.—San Antonio 1991, no pet.).

*J.S.C.* involved a patient diagnosed with chronic schizophrenia with acute exacerbation. Evidence that J.S.C. was found to be catatonic while at the clinic and was hallucinating and delusional proved that he was mentally ill. *Id.* at 94. While additional testimony that J.S.C. was unable to care for himself outside of the hospital demonstrated by inference his distress and deterioration of ability to function, such proof was insufficient to support commitment because no specific facts were provided by the examining physician in support of this statement. *Id*. at 96. Likewise, no specific facts are provided here in support of Kalra's conclusion that, if left untreated, E.R.'s condition will continue to deteriorate to the point where she will be unable to take care of herself.

Because there is no evidence of an overt act or continuing pattern of behavior that tends to confirm E.R.'s distress and a deterioration of her ability to function, the evidence is legally insufficient to support this finding based on Section 534.034(a) of the Texas Health and Safety Code. Therefore, viewing the evidence in the light most favorable to the finding, we conclude that a reasonable trier of fact could not have formed a firm belief or conviction that this finding was true. *See J.F.C*., 96 S.W.3d at 266; *cf. State ex rel. G.B*., No. 06-06-00100-CV, 2006 WL 3492325, at *4 (Tex. App.—Texarkana Dec. 5, 2006, no pet.) (mem. op.) (evidence, for example,

that appellant woke up in motel room with man whose identity was unknown to her and who managed to get into her room without her recalling how, and who was trying to force sex on her, and who pieced together a story as best she could to explain these bizarre events was suffering severe and abnormal mental, emotional, or physical distress as well as substantial mental or physical deterioration of her ability to function independently).

## IV. CONCLUSION

We reverse the trial court's order and render judgment denying the State's application for mental health services. Having rendered such judgment, we accordingly order E.R.'s immediate release from the institution to which she has been committed. *See* TEX. HEALTH & SAFETY CODE ANN. § 574.033(b) (Vernon 2010); *see also* TEX. R. APP. P. 43.2(c). Our mandate will issue immediately upon motion, should appropriate action not be taken in accordance with this opinion.

Jack Carter
Justice

Date Submitted: January 5, 2011
Date Decided: January 7, 2011

18